**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| Frank Teesdale, Debbie Teesdale, Araseli Luna, Glen Zdziarski, Diane Zdziarski, and Garfield Ridge Baptist Church, | ) ) ) ) | |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | No. |
| The City of Chicago, an Illinois municipal corporation, Officer John Svienty, in both his official and individual capacities, Officer Megan Aquinaga, in both her official and individual capacities, and John Does 1-10, in both their official and individual capacities) | ) ) ) ) ) ) ) | Trial By Jury Demanded |
| Defendants, | ) | |

**COMPLAINT FOR DECLARATORY JUDGMENT,**
**PRELIMINARY AND PERMANENT INJUNCTION, AND DAMAGES**

COMES NOW the Plaintiffs, Frank Teesdale, Debbie Teesdale, Araseli Luna, Glen Zdziarski, Diana Zdziarksi, and Garfield Ridge Baptist Church (hereinafter "the Church") by and through their undersigned counsel, complain against the above-named Defendants, their employees, agents, and successors in office, and in support thereof allege the following:

**NATURE OF THE CASE**

1. This action seeks to vindicate and protect Plaintiffs' constitutional rights.

2. Looking back, this civil rights action, brought under 42 U.S.C. § 1983, seeks damages against Defendants, and their agents, servants and employees, for prohibiting Plaintiffs from exercising their constitutional rights on the public streets during the City of Chicago Special Event entitled "St. Symphorosa Family Fest 2008" (hereinafter "Family Fest 2008") and unlawfully arresting and falsely imprisoning Plaintiff Frank Teesdale at the festival on July 12,

2008 in violation of the First, Fourth, and Fourteenth Amendments to the United States

Constitution as well as Article 1 § 4 of the Illinois Constitution, and the Illinois Religious

Freedom Restoration Act (I.R.F.R.A.), 775 Illinois Compiled Statutes 35/1 *et seq.*.

3.        Looking forward, Plaintiffs seek declaratory and injunctive relief that will

preclude Defendants' from prohibiting Plaintiffs' from exercising their constitutional rights on

the public streets during this year's City of Chicago Special Event entitled "St. Symphorosa

Family Fest 2009" (hereinafter "Family Fest 2009") by asserting a permit requirement for

Plaintiffs' speech and religious exercise or by denying Plaintiffs' entrance onto the public streets

and into the free public festival.

4.        An actual controversy exists between the parties involving substantial

constitutional issues in that the Defendants have taken actions to violate Plaintiffs' free speech,

free exercise and equal protection rights guaranteed under the First, Fourth, and Fourteenth

Amendments to the United States Constitution as well as Article 1 § 4 of the Illinois

Constitution, and the Illinois Religious Freedom Restoration Act, 775 Illinois Compiled Statutes

35/1 *et seq.*

5.        Defendants' asserted permit requirement for Plaintiffs' peaceful assembly and

speech on public property violates time-honored free speech practice under the First and

Fourteenth Amendments to the United States Constitution.  Plaintiffs seek declaratory judgment,

injunctive relief, and damages arising out of Defendants' unconstitutional policies and actions.

Unless this Court issues injunctive relief, Defendants will be able to continue squelching

Plaintiffs' core exercise of their First Amendment in a traditional public forum.

6.        Defendants' illegal arrest and imprisonment of Plaintiff Frank Teesdale violated

his Fourth and Fourteenth Amendment rights to be secure from unreasonable search and seizure;

these acts also deprived him of his liberty without due process of law, in violation of the Fifth Amendment. Defendants' illegal arrest and imprisonment of Plaintiff Frank Teesdale constituted the torts of false arrest and false imprisonment under Illinois state law. Plaintiff Frank Teesdale seeks compensatory damages for these violations.

## JURISDICTION AND VENUE

7. This Court has jurisdiction of this claim under, and by virtue of, Title 28 U.S.C. §§ 1331, 1343, 2201 and 2202. Further, this Court has supplemental jurisdiction under 28 U.S.C §1367.

8. This Court is authorized to grant Plaintiffs' prayer for relief under Title 42 U.S.C. § 1988, and the Illinois Religious Freedom Restoration Act, 775 Illinois Compiled Statutes 35/1 *et seq.*

9. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because all of the events giving rise to the claims asserted herein occurred in Cook County, Illinois.

## PARTIES

10. Plaintiff Frank Teesdale is and was at all times relevant to this cause, a resident of Chicago, Illinois. Frank Teesdale works part time for the Department of Homeland Security and is also a member of the Garfield Ridge Baptist Church of Chicago, Illinois where he serves as a pastor.

11. Plaintiff Debbie Teesdale is Frank Teesdale's wife and was at all times relevant to this cause, a resident of Chicago, Illinois and a member of the Garfield Ridge Baptist Church.

12. Plaintiff Araseli Luna is and was at all times relevant to this cause, a resident of Chicago, Illinois and a member of the Garfield Ridge Baptist Church.

13.     Plaintiff Glen Zdziarski is and was at all times relevant to this cause, a resident of Chicago, Illinois and a member of the Garfield Ridge Baptist Church.

14.     Plaintiff Diane Zdziarski and was at all times relevant to this cause, a resident of Chicago, Illinois and a member of the Garfield Ridge Baptist Church.

15.     Plaintiff Garfield Ridge Baptist Church, is a not-for-profit ministry located at 5520 S. Narrangansett Avenue, Chicago, Illinois 60638 approximately a mile and a half from where the St. Symphorosa Family Fest was held and where Pastor Teesdale was unlawfully arrested.

16.     One of the primary religious exercises of Plaintiffs is to fulfill the instructions Jesus gave to his followers (the Great Commission) as set forth in Matthew 28:18-20 (NIV): "Then Jesus came to them and said, 'All authority in heaven and on earth has been given to me. Therefore go and make disciples of all nations, baptizing them in the name of the Father and of the Son and of the Holy Spirit, and teaching them to obey everything I have commanded you. And surely I am with you always, to the very end of the age.'"

17.     As American citizens with God-given, inalienable rights recognized by the U.S. Constitution, Plaintiffs interpret Matthew 28:18-20 to give them the honor and duty to tell others, in a peaceful way, of the forgiveness and healing available through faith in Jesus.

18.     Defendant, CITY OF CHICAGO, is a public body municipal corporation located in Cook County, Illinois, and is established, organized, and authorized pursuant to Illinois Statutes with the authority to sue and be sued and was at all times relevant herein acting within the course and scope of its authority and under color of state law.  Defendant CITY OF CHICAGO by the CITY OF CHICAGO POLICE DEPARTMENT provided the security

4

personnel and handled all related issues at the Family Fest 2008. See p. 3 of the St. Symphorosa City of Chicago Special Event application attached as Exhibit A.

19.     Defendants OFFICERS JOHN SVIENTY, MEGAN AQUINAGA, and JOHN DOES 1-10 are Chicago police officers who suppressed Plaintiffs' speech, violated Plaintiffs constitutional rights, and unlawfully arrested Pastor Teesdale on July 12, 2008.

20.     Chapter 65 of the Illinois Municipal Code § 5/1-4-5 obligates the City of Chicago's to indemnify members of the City of Chicago police department for any judgment recovered against them for injuries caused by the officers while engaged in the performance of their duties. 65 ILCS § 5/1-4-5.

## STATEMENT OF FACTS

21.     Plaintiffs are Christians who regard the Bible as God's instruction on how to live their lives. In keeping with this sincerely held religious belief, Plaintiffs believe that they have the honor of telling as many other people as they can about Jesus and their individual need to be "born again," that is, to be reconciled to God. This comes only by believing that Jesus is God, and that Jesus suffered and died on the cross (and was resurrected from the dead subsequently) to pay the penalty for the sins of humanity, particularly those individuals who will believe in him; and who seek healing and forgiveness for and deliverance from their past, present, and future personal sin—"sin" being defined as transgressions of the binding commands of God and falling short of the glory of God, which everyone has done.

22.     Plaintiffs accomplish this purpose primarily through the public distribution of free religious literature ("Gospel tracts") and one-on-one discussion in the public square.

23.      Plaintiffs have often utilized the distribution of Gospel tracts on public sidewalks (by offering them to individuals passing by) as a primary method in communicating the Gospel message to people.

24.      Plaintiffs distribute Gospel tracts and share this message in a manner that does not obstruct or block the flow of pedestrian traffic.

25.      On Saturday, July 12th, Plaintiffs, along with a few others from the Garfield Ridge Baptist Church (seven adults and three children in total) drove to the St. Symphorosa Family Fest 2008, a City of Chicago Special Event produced by St. Symphorosa Parish, a parish of the Chicago Archdiocese and recognized as one of the largest parish festivals in the Chicago Archdiocese.

26.      The St. Symphrosa Family Fest 2008 was held from 6:00 p.m.-12:00 a.m. on July 10th and 11th, 2008 and from 1:00 p.m.-12:00 a.m. on July 12th and 13th. See p. 3 of the St. Symphorosa City of Chicago Special Event application attached as Exhibit B.

27.      The estimated attendance for the 2008 festival was over 800 individuals per day. See Exhibit B.

28.      The event was licensed by the City of Chicago and was not a block party.

29.      St. Symphorosa Parish's motto is "Family Celebrating Faith" and one of its missions is "to teach the gospel message of Jesus." See St. Symphorosa Parrish website at http://www.eteamz.com/stsyms/; see also http://02c5205.netsolhost.com/mission.htm.

30.      Plaintiffs seeking to share the gospel message of Jesus with the public attending the Family Fest, parked at the corner of two public thoroughfares, W. 61st Street and S. Mason Ave., Chicago, IL.

31.     From there they walked south on S. Mason Ave. to 62nd Street with Gospel tracts in hand, as well as, a megaphone for preaching, a couple of signs (including sandwich board type), and a banner in tow.

32.     When they approached 62nd Street it was blocked off to vehicular traffic and a Chicago police officer was standing by the barricade near a sign that stated that the street was closed to regular car traffic and another sign prohibiting outside beverages.

33.     There was a sign indicating free admission and there was no sign indicating any right of either the City of Chicago or St. Symphorosa Parrish to refuse anybody admission to the public streets on which the event was being held.

34.     For the most part, single-family homes lined both sides of the streets used for the festival.

35.     Since Pastor Teesdale was carrying a small personal water bottle, he approached the officer to ask whether he could bring the water in with him.

36.     The officer asked Pastor Teesdale if he was event staff.

37.     Pastor Teesdale said that he was not event staff but was rather there to tell people about Jesus.

38.     The officer allowed Plaintiffs to proceed and said that he did not think there would be a problem with Plaintiff bringing the water bottle in to the Festival.

39.     Plaintiffs then walked west on W. 62nd St. and entered the parameters of the festival and began handing out tracts only to those who would receive them.

40.     They walked until they reached the intersection of Austin Avenue and West 62nd St. where they looked for a good spot south on Austin Avenue to unfurl their banner, continue to hand out tracts, and preach to passersby.

41.     West 62nd Street and Austin Avenue are both public thoroughfares that were at all relevant times herein open to the general public (free admission and unobstructed ingress and egress for pedestrian traffic).

42.     They were still walking South on Austin Avenue looking for a location on public property to settle when three officers (DEFENDANTS JOHN DOE 1-3) walked up behind them and stopped them. All three John Does were present throughout the following encounter.

43.     The three officers were carrying side-arms, handcuffs, and two-way radios.

44.     Each officer also wore a St. Symphorosa "SECURITY" shirt.

45.     Based on St. Symphorosa's application for permission to hold the Family Fest 2008 which was received by the Mayor's Office of Special Events on May 30, 2008, the City of Chicago Police Department was providing security for the festival. St. Symphorosa did not hire or provide private security for this event. See p. 3 of said application attached hereto as Exhibit A.

46.     One of the officers (John Doe 1) asserted that Plaintiffs were not allowed to be at the event handing out tracts.

47.     Pastor Teesdale told the officers that the event was a great opportunity to share the gospel message with people that might not attend a church.

48.     The officer (John Doe 1) told Plaintiffs words to the effect that "they [the festival goers] all go to church and didn't need [Plaintiffs'] tracts" and then told Plaintiffs to leave the festival or they would be arrested.

49.     The officer (John Doe 1) did not present Plaintiffs with any alternative locations where they could go within the parameters of the Family Fest.

50.     Pastor Teesdale then asserted that they had First Amendment rights to do what they were doing.

51.     The officer (John Doe 1) then claimed that the event was authorized by a City of Chicago permit and that the festival was only open to those who had obtained a permit. This was the only reason given by the officer. The officers did not specify a statute or ordinance requiring a permit for Plaintiffs' first amendment exercise.

52.     The officers did not indicate where or when they believed Plaintiffs had a right to speak and share their message. Plaintiffs were never informed of any time, place, or manner restrictions to which they could adhere. They were simply told that they had to leave.

53.     Pastor Teesdale, believing he had a First Amendment right to be where he was speaking with the public at the event, reached down to key his megaphone.

54.     Other people at the event, including the event organizers and musicians, were using sound amplification equipment

### Defendants' Illegal Arrest of Plaintiff

55.     Before Pastor Teesdale even began to speak through the megaphone, the officer (John Doe 1) grabbed the megaphone out of his hand and told him that he was under arrest. John Does 2 and 3 stood in support of John Doe 1.

56.     The officer (John Doe 1) put an end to Pastor Teesdale's peaceful first amendment activity by grabbing his wrists, pulling them behind his back, and cuffing him.

57.     Plaintiffs were alarmed and confused by Defendants' (John Doe 1-3) unexplained and brash actions.

58.     At no time did Plaintiffs block or obstruct vehicular or pedestrian traffic.

59.　　　At not time did Defendants (John Doe 1-3) inform Plaintiffs of a concern for the flow of traffic.

60.　　　Plaintiffs, at all times, acted in a reasonable, peaceful, and safe manner.

61.　　　The officers (John Doe 1-3) made no mention of any complaints from the Family Fest sponsor, festival goers, or from event staff about the activity of Plaintiffs.

62.　　　Pastor Teesdale was the only member of the group arrested.

63.　　　The Officer (John Doe 1) then escorted Pastor Teesdale South toward W. 63rd St. out of the event parameters and called other members of the Chicago Police force on his two-way radio to inform them about the arrest.

64.　　　Pastor Teesdale and the Officer (John Doe 1) waited at the corner of W. 63rd St. and Austin Avenue for about 30 minutes until DEFENDANTS OFFICERS JOHN SVIENTY and MEGAN AQUINAGA arrived.  Pastor Teesdale was kept in handcuffs alongside a heavily trafficked public road and made to appear as a criminal to the passersby.

65.　　　DEFENDANTS OFFICERS SVIENTY and AQUINAGA then proceeded to frisk Pastor Teesdale and empty his pockets.

66.　　　After the Officer (John Doe 1) informed OFFICER JOHN SVIENTY about the reason for Pastor Teesdale's arrest, OFFICER JOHN SVIENTY berated Pastor Teesdale saying to him, "You talk that bull****?!"

67.　　　OFFICER JOHN SVIENTY then stated, in an attempt to intimidate Pastor Teesdale's wife, Plaintiff Debbie Teesdale who had followed her husband and the office (John Doe 1) to W. 63rd St., that her husband would be locked up in jail for the next eight hours.

***Defendants' Illegal Imprisonment of Plaintiffs***

68.     Pastor Teesdale was then driven to the police station where he was subjected to more harassment for daring to share the gospel at the public festival.

69.     Pastor Teesdale was put in a holding cell at the police station and held there until after 11:00 p.m..

70.     Plaintiffs intend to continue sharing the Gospel with individuals in public forums in and around Chicago, including City of Chicago Special Events.

71.     The contents of the Gospel tracts Plaintiffs distributed clearly identified the religious expression and free speech interests inherent in Plaintiff's activity.  See an example attached hereto as Exhibit C.

72.     Plaintiffs were not soliciting funds.

73.     When Pastor Teesdale was taken to precinct 008, he was told that he was charged with criminal trespass to land.

74.     Pastor Teesdale was released at 9:35 p.m. on July 12th, 2008.

75.     Pastor Teesdale was then charged with one count of criminal trespass to land (720 ILCS § 5/21-3-A-2) and the bond amount was set at $1,000.00, bail at $100.00.

76.     Plaintiffs were never charged with any violation of a municipal permit requirement.

*Charge Dismissed With Prejudice*

77.     Pastor Teesdale then appeared with counsel and witnesses ready for trial on August 18, 2008 at the Circuit Court of Cook County, 555 West Harrison.  Since the state was not ready to try the case, upon the state's motion the court struck the state's case (1 charge of criminal trespass to land) against Pastor Teesdale with leave to refile.

78.     Pastor Teesdale thereafter, through counsel, filed a demand for a speedy trial.

79.     The State failed to seek leave to refile the case against Pastor Teesdale before the 160 day Speedy Trial period lapsed, so Pastor Teesdale then moved through counsel for a dismissal with prejudice.  The Circuit Court of Cook County, on May 21, 2009, granted Pastor Teesdale's motion and dismissed the case against him with prejudice.  See Final Order attached hereto as Exhibit D.

80.     As a direct and proximate result of Defendants unlawful arrest and prosecution of Frank Teesdale, Frank Teesdale suffered actual damages of at least $8,775.00 (including the amount paid for bail $100.00, attorneys fees and costs at $3,675.00, and $5,000.00 for the loss of his liberty and constitutional freedoms).  Each other Plaintiff seeks damages of $1,000 plus costs incurred in this case, as a result of the chilling of their first amendment rights.  Additionally, Plaintiffs seek punitive damages against the individual police officers.

81.     As a direct and proximate result of Defendants' unlawful arrest and prosecution of Frank Teesdale, Frank Teesdale suffered mental anguish and personal humiliation.

82.     Defendants did with the purpose and intent of willfully and knowingly violating Plaintiffs' right to freedom of speech and free exercise of religion, order the Plaintiffs to cease distributing the Gospel tracts and sharing the gospel with the public at the City of Chicago Special Event in violation of Plaintiffs' civil and equal protection rights.

83.     Plaintiffs desire to have access to the public thoroughfares in the City of Chicago during other City of Chicago Special Events in the future.

84.     However, because of Defendants' unlawful arrest and the speech suppressing policy, practice and threats described herein, Plaintiffs reasonably believe that they will face similar treatment from Defendants if they engage in such speech or free exercise.

85.     As a result of his concern of further prosecution by Defendants, a concern born out of his previous unlawful arrest and detention, Pastor Teesdale did not organize any further trips to share the gospel at City of Chicago Special Events until he prevailed against the criminal charge.

86.     Defendants City of Chicago and the City of Chicago Police Department have failed to provide proper training to their subordinates on the issue of the freedom of speech in traditional public forums such as the public streets at issue herein at City of Chicago Special Events, which has contributed to the violation of the Plaintiffs' constitutional rights and the rights of others not before the court.

87.     Defendants knew or should have known that their actions violated the clearly established constitutional rights of Plaintiffs and others not before the Court.

**COUNT I**
**VIOLATION OF THE RIGHT TO FREEDOM OF SPEECH**
**BY DEFENDANTS CITY OF CHICAGO AND INDIVIDUAL OFFICERS:**
**FIRST AMENDMENT OF THE UNITED STATES CONSTITUTION**

88.     Plaintiffs hereby incorporate by reference all foregoing allegations as if set forth fully herein.

89.     Plaintiffs' right to freedom of speech is protected under the First Amendment to the United States Constitution.

90.     The public streets on which Family Fest 2008 was held are public thoroughfares and quintessential examples of traditional public forums.

91.     Defendants OFFICER SVIENTY, OFFICER AQUINAGA, AND JOHN DOES 1-20, and the CITY OF CHICAGO'S policies and actions in removing Plaintiffs from the public streets of S. Austin Avenue and W. 62nd Street, Chicago, Illinois during the City of Chicago's

Special Event, the 2008 St. Symphorosa Parish Family Fest, violate Plaintiffs' First Amendment right to free speech.

92.     Defendants' action deprived Plaintiff of his right to free speech by granting unfettered discretion to Defendant and its agents to deny Plaintiffs their right to distribute Gospel tracts with those on public property, carrying signs, speaking with the public, and engaging in public preaching.

93.     Defendants' actions against Plaintiffs serve as an unconstitutional prior restraint on free exercise.

94.     Defendants' policies and actions were content-based speech restrictions.

95.     Defendants' policies and actions were viewpoint-based speech restrictions.

96.     Defendants' policies and actions were based on Plaintiffs' religious views.

97.     Defendants' actions unconstitutionally chilled and abridged the right of Plaintiffs to leaflet, which is a right guaranteed by the First Amendment to the United States Constitution.

98.     Defendants' policies and actions do not serve a compelling governmental interest, nor are they narrowly tailored to achieve a compelling governmental interest.

99.     Plaintiffs were not given reasonable opportunity to engage in free speech activities given the public nature of the event and forum.

100.     The violation of Plaintiffs' constitutional rights has caused, and will continue to cause, Plaintiffs and others who wish to distribute Gospel tracts and engage in other protected conduct in public fora to suffer hardship and actual and impending irreparable injury.

**COUNT II**
**VIOLATION OF THE FIRST AMENDMENT**
**OF THE UNITED STATES CONSTITUTION**
**RIGHT TO FREE EXERCISE OF RELIGION**
**BY DEFENDANTS CITY OF CHICAGO AND INDIVIDUAL OFFICERS**

101.    Plaintiffs hereby incorporate by reference all foregoing allegations as if set forth fully herein.

102.    Plaintiffs desire to speak about their faith is motivated by their sincerely held religious belief.

103.    Defendants' policies and actions restricting Plaintiffs' religious speech in a traditional public forum impose a burden on the Plaintiffs that is not imposed on other individuals.

104.    By forcing Plaintiffs to choose between abandoning their religious practice in order to gain access to speak in the traditional public forum, or abiding by their religious beliefs only to face removal or legal penalties, Defendants imposed a substantial burden on Plaintiffs' sincerely held religious beliefs.

105.    Defendants' policies and actions serve no rational or compelling interest, nor are they narrowly tailored to achieve any legitimate government interest.

### COUNT III
### VIOLATION OF THE DUE PROCESS CLAUSE
### OF THE FOURTEENTH AMENDMENT OF THE
### UNITED STATES CONSTITUTION BY DEFENDANTS
### CITY OF CHICAGO AND INDIVIDUAL OFFICERS

106.    Plaintiffs hereby incorporate by reference all foregoing allegations as if set forth fully herein.

107.    Defendants' policies and actions prohibiting Plaintiffs from passing out religious literature, holding signs, and otherwise chilling them from freely engaging in communication with others at the Family Fest 2008 violated Plaintiffs' right to due process of law.

108.    Defendants' policies and actions are arbitrary and capricious.

109.    Defendants' policies and actions were vague.

110.     Defendants' had unfettered discretion to restrict speech based on viewpoint.

111.     Defendants' policies and actions denied, and are denying, Plaintiffs a fundamental right.

112.     Defendants' policies and actions do not serve a compelling governmental interest, nor are they narrowly tailored to achieve a compelling governmental interest.

**COUNT IV**
**VIOLATION OF THE FOURTH AMENDMENT**
**OF THE UNITED STATES CONSTITUTION**
**UNREASONABLE SEIZURE BY DEFENDANTS**
**CITY OF CHICAGO AND INDIVIDUAL OFFICERS**

113.     Plaintiff FRANK TEESDALE hereby incorporates by reference all foregoing allegations as if set forth fully herein.

114.     Defendants intentionally arrested, detained, and imprisoned Pastor Teesdale, which constituted a seizure under the Fourth Amendment.

115.     Defendants had no legal basis for their seizure of Pastor Teesdale, as the alleged permit requirement for Plaintiffs' speech and presence at the City of Chicago Special Event did not exist.

116.     Further, Defendants' had no basis upon which to charge Frank Teesdale with criminal trespass to land as Frank Teesdale was on public property peacefully and respectfully exercising his first amendment right to tell people about Jesus without interfering with traffic or otherwise acting unreasonably.

117.     Defendants had no probable cause to believe that Pastor Teesdale was violating any law, much less one justifying the seizure of his person; accordingly, their seizure of Pastor Teesdale was unreasonable and in violation of the Fourth Amendment.

118.     Under the facts and circumstances known to the Defendants at the time of arrest, no reasonable police officer would have believed that probable cause existed for arrest of the Pastor Teesdale. Earlier on the same day of the arrest, the officer standing at the barricade of the event had no objection to Plaintiffs' stated goal of speaking to people about Jesus.

119.     Pastor Teesdale suffered deprivation of liberty, physical and mental pain, subjection to public spectacle and humiliation as result of Defendants' unreasonable seizure of his person.

120.     As a direct and proximate result of the Defendants' actions, the Pastor Teesdale was unlawfully arrested, searched, detained, and suffered other damages, including but not limited to economic and other loss.

**COUNT V**
**VIOLATION OF THE EQUAL PROTECTION CLAUSE OF THE**
**FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION**
**AND 42 U.S.C. §1983 BY DEFENDANTS CITY OF CHICAGO**
**AND INDIVIDUAL OFFICERS**

121.     Plaintiffs hereby incorporate by reference all foregoing allegations as if set forth fully herein.

122.     Plaintiffs' free speech and free exercise rights are protected from arbitrary discrimination under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

123.     Plaintiffs' right to freedom of speech and free exercise of religion are fundamental rights protected under the First Amendment to the United States Constitution.

124.     Defendants' action against Plaintiffs substantially burden Plaintiffs' constitutional rights in an arbitrary and capricious manner by discriminating among similarly situated persons

who are allowed to distribute leaflets and hold signs in the traditional public fora which Defendants maintain.

125.     Others at the same event were permitted to engage each other in discussion and other forms of verbal and non-verbal communication and were free from interference from Defendants.

126.     Defendants, state actors, intentionally, willfully and knowingly discriminated against Plaintiffs and deprived Plaintiffs of equal protection of the law, by denying Plaintiffs the right to teach the gospel message of Jesus (see ¶ 27 herein) and distribute religious literature through an unconstitutional prior restraint and viewpoint and/or content-based regulations.

127.     Defendants are not uniformly enforcing a regulation on speech, but are targeting Plaintiffs' speech in an arbitrary and capricious manner.

128.     Defendants' actions against Plaintiffs constitute a violation of Plaintiffs' right to equal protection because the action fosters viewpoint and content-based decisions by allowing discretionary decisions and permitting other persons and groups to express their speech rights without restraint.

129.     Defendants' action against Plaintiffs prohibit Plaintiffs from expressing their free speech rights in an inequitable manner by limiting Plaintiffs' expression to the whim of Defendants' determination as to what type of speech is appropriate in traditional public fora.

130.     Defendants' action against Plaintiffs serves as an unconstitutional prior restraint on free speech.

131.     Defendants' action against Plaintiffs imposes viewpoint and content-based restrictions on speech and allows future viewpoint and content-based restrictions on speech.

132.     Defendants' actions against Plaintiffs unconstitutionally chill and abridge the right of Plaintiffs to hand out gospel tracts and engage in other free speech activity which are rights guaranteed by the First and Fourteenth Amendments to the United States Constitution.

133.     The violation of Plaintiffs' constitutional rights has caused, and will continue to cause, Plaintiffs to suffer hardship and actual and impending irreparable injury.

**COUNT VI**
**VIOLATION OF THE RIGHT TO FREE EXERCISE OF RELIGION**
**THE ILLINOIS RELIGIOUS FREEDOM RESTORATION ACT**
**BY DEFENDANT CITY OF CHICAGO AND INDIVIDUAL OFFICERS**

134.     Plaintiffs hereby incorporate by reference all foregoing allegations as if set forth fully herein.

135.     Plaintiffs' religious activities are protected by the Illinois Religious Freedom Restoration Act, 775 Illinois Compiled Statutes 35/1 *et seq*.

136.     Defendants' actions against Plaintiffs substantially burden Plaintiffs' free exercise of their religious beliefs and practice.

137.     Defendants' actions against Plaintiffs are unconstitutional abridgments of Plaintiffs' affirmative right to free exercise of religion protected by the Illinois Religious Freedom Restoration Act.

138.     Defendants' actions against Plaintiffs substantially burden Plaintiffs' right to free exercise of religion by granting unfettered discretion to Defendants and its agents to deny Plaintiffs' right to engage in the distribution of Gospel tracts.

139.     Defendants' actions against Plaintiffs serve as an unconstitutional prior restraint on free speech.

140.     Defendants' actions against Plaintiffs are viewpoint and content-based restrictions on speech and allow future viewpoint and content-based restrictions on speech.

141.    Defendants' actions against Plaintiffs unconstitutionally chill and abridge the rights of Plaintiffs to leaflet and minister which are rights guaranteed by the Illinois Religious Freedom Restoration Act.

142.    The violation of Plaintiffs' constitutional rights has caused, and will continue to cause, Plaintiffs to suffer hardship and actual and impending irreparable injury.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs request the following relief:

A.    That this Court issue a permanent injunction (and temporary restraining order and preliminary injunction as necessary) restraining Defendants, its officers, agents, employees and all other persons acting in active concert with them or any of them from obstructing or threatening to obstruct Plaintiffs from exercising their constitutionally protected rights at the St. Symphorosa Family Fest 2009, and directing Defendants to allow the distribution of Plaintiffs' pamphlets with the same degree of protection with all the rights and privileges afforded similarly situated persons;

B.    That this Court enter a Declaratory Judgment declaring Defendants' policies and actions, in prohibiting Plaintiffs from sharing the gospel through the public distribution of free religious literature ("Gospel tracts") and one-on-one discussion with the public at the St. Symphorosa Family Fest were unconstitutional.

C.    That this Court enter a Declaratory Judgment declaring Defendants' policies and actions, in manipulating Plaintiffs' actions under threat of removal from a public event, threat of arrest, and actual arrest as to Plaintiff

Frank Teesdale, and in otherwise restricting their speech, were unconstitutional.

D.     Enter judgment on behalf of Plaintiffs and against Defendants for monetary damages to be determined at trial by jury;

E.     Enter judgment for reasonable attorneys' fees and costs incurred in bringing this action in accordance with 42 U.S.C. § 1988; and

F.     Grant such other and further relief as it deems equitable and just.

Attorneys for Plaintiffs


/s/ Andy R. Norman
Andy Norman
John W. Mauck
Noel W. Sterett
Mauck & Baker, LLC
1 N. LaSalle, Suite 600
Chicago, IL 60602
312-332-2400
312-726-1039 Facsimile

## DEMAND FOR JURY TRIAL

Plaintiffs request trial by Jury of all issues so triable.

Respectfully submitted this _6_th day of July, 2009.


s/ Andy Norman
Andy Norman