**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| Frank Teesdale, Debbie Teesdale, Araseli )<br>Luna, Glen Zdziarski, Diane Zdziarski, and )<br>Garfield Ridge Baptist Church, )<br>    )<br>    Plaintiffs,    )<br>    )<br>    v.    )<br>    )<br>The City of Chicago, an Illinois municipal )<br>corporation, Officer John Svienty, in his )<br>official and individual capacity, Officer )<br>Megan Aquinaga, in her official and )<br>individual capacity, and John Does 1-10, )<br>    )<br>    Defendants,    ) | Judge William T. Hart<br><br>No. 09 CV 4046<br><br>Magistrate Judge Nan R. Nolan<br><br>Jury Trial Demanded |

**PLAINTIFFS' EMERGENCY MOTION FOR
TEMPORARY RESTRAINING ORDER AND PRELMINARY INJUNCTION**

Plaintiffs Frank Teesdale, Debbie Teesdale, Araseli Luna, Glen Zdziarksi, Diane

Zdziarski, and Garfield Ridge Baptist Church (hereinafter "Plaintiffs"), pursuant to Rule

65 of the Federal Rules of Civil Procedure, move for a Temporary Restraining Order

against the above-named Defendants (hereinafter "Defendants") prohibiting the

Defendants, their agents, servants and employees, from denying Plaintiffs their

constitutional right to share their religious message on the public streets during the City

of Chicago Special Event entitled the "2009 St. Symphorosa Parish Family Fest," and in

this Motion incorporate by reference their previously filed Complaint. In support of this

Motion, Plaintiffs state as follows:

1.      Plaintiffs reincorporate the allegations of the Complaint. The Declaration of

Pastor Frank Teesdale is attached hereto as Exhibit A.

2.     This Court has jurisdiction of this action because it arises under the First Amendment and the Fourteenth Amendment to the Constitution of the United States.

3.     The purpose for a TRO in this case is to permit Plaintiffs to engage in their lawful, peaceful, non-obstructive religious speech activity, which includes handing out tracts and discussing their Christian faith, on the public streets and sidewalks in the City of Chicago during the upcoming 2009 St. Symphorosa Family Fest.

4.     Plaintiffs request a TRO that would allow them to engage in their lawful speech activity and do not seek to trespass on private property, namely St. Symphorosa's private property, nor engage in disorderly or any other criminal conduct; and observe all reasonable time, place, and manner restrictions.  Consequently, should this honorable court issue the requested TRO, St. Symphorosa's interest in its private property and the City of Chicago's interest in maintaining a safe and orderly festival remain fully protected by existing law.

5.     A Temporary Restraining Order should be issued immediately because Plaintiffs' rights and the rights of others similarly situated, under the Fourteenth Amendment, and under the Free Exercise and Free Speech Clauses of the First Amendment are being violated and Plaintiff is thus being harmed irreparably. Deprivation of Fourteenth Amendment rights, First Amendment rights, and statutory civil rights protections, even for a short period of time, constitutes irreparable harm. *Elrod v. Burns*, 427 U.S. 347, 373-74 (1976).

6.     Plaintiffs are Christians who regard the Bible as God's instruction on how to live their lives. In keeping with this sincerely held religious belief, Plaintiffs believe that they have the honor of telling as many other people as they can about Jesus and their

individual need to be "born again," that is, to be reconciled to God. This comes only by believing that Jesus is God, and that Jesus suffered and died on the cross (and was resurrected from the dead subsequently) to pay the penalty for the sins of humanity, particularly those individuals who will believe in him; and who seek healing and forgiveness for and deliverance from their past, present, and future personal sin—"sin" being defined as transgressions of the binding commands of God and falling short of the glory of God, which everyone has done. Teesdale Decl., ¶¶ 2-3.

7.      Plaintiffs accomplish this purpose primarily through the public distribution of free religious literature ("Gospel tracts"), street preaching, and one-on-one discussion in the public square. Teesdale Decl., ¶¶ 6-7.

8.      Plaintiffs previously have utilized the distribution of Gospel tracts on public sidewalks and streets (by offering them to individuals passing by) as an effective method in communicating their message to people. Teesdale Decl., ¶¶ 6-7.

9.      Plaintiffs distribute Gospel tracts in a manner that does not obstruct or block the flow of pedestrian traffic. Teesdale Decl., ¶ 7.

10.      On July 12, 2008, Plaintiffs distributed Gospel tracts on the public thoroughfares of S. Mason Ave. and W. 62nd Street, Chicago, Illinois at the 2008 St. Symphorosa Family Fest. It was then that Plaintiffs learned from the City of Chicago Police Officers that their speech activity was not going to be allowed on the public streets during the festival. They were told to cease their speech activity and leave the festival or face arrest. Teesdale Decl., ¶¶ 8-49.

11.      Plaintiff Frank Teesdale, asserting his constitutional rights, was arrested and charged, albeit unlawfully, with one count of criminal trespass to land for not leaving the

public thoroughfares. The charge was later dismissed with prejudice. Teesdale Decl., ¶¶ 50-56.

12.     In light of the 2008 arrest of Plaintiff Frank Teesdale and the City of Chicago's position with respect to the speech activity at the 2008 festival, Plaintiffs sought the cooperation of St. Symphorosa, as the festival sponsor. At the time of the filing of this motion, Plaintiffs were still in discussion with St. Symphorosa for an agreement whereby Plaintiffs would be allowed to share the gospel and hand out religious tracts on the streets of the 2009 St. Symphorosa Family Fest. Teesdale Decl., ¶¶ 57-60; 65.

13.     Upon information and belief, the festival boundaries this year are the same as they were in 2008.

14.     Plaintiffs plan to be at the festival on Saturday, July 11, 2009 to hand out religious literature and to dialogue with the public about Jesus and salvation on the public streets. Teesdale Decl., ¶ 57.

15.     Plaintiffs do not intend to solicit funds or pass out materials containing commercial speech. Teesdale Decl., ¶¶ 46-47.

16.     While the public thoroughfares at issue are closed will be closed to vehicle traffic, as they were last year, the public sidewalks and streets remain open for pedestrian traffic, including pedestrian traffic not associated with the festival. Teesdale Decl., ¶ 12.

17.     The festival will be open to all members of the public and free of charge. St. Symphorosa has no exclusive right to access or use of these public thoroughfares. Teesdale Decl., ¶ 12.

18.     This TRO request requires immediate attention because this year's festival is scheduled to commence on Thursday, July 9, 2009 and only runs through Sunday, July 12, 2009.

19.     In the case of *Christian Legal Society v. Walker*, 453 F.3d 853, 859 (7th Cir. 2006), the court enunciated the elements necessary to obtain a preliminary injunction:

> To win a preliminary injunction, a party must show that it is reasonably likely to succeed on the merits, it is suffering irreparable harm that outweighs any harm the nonmoving party will suffer if the injunction is granted, there is no adequate remedy at law, and an injunction would not harm the public interest. (Citation.) If the moving party meets this threshold burden, the district court weighs the factors against one another in a sliding scale analysis, (citation), which is to say the district court must exercise its discretion to determine whether the balance of harms weighs in favor of the moving party or whether the nonmoving party or public interest will be harmed sufficiently that the injunction should be denied.
>
> *            *            *
>
> The loss of First Amendment freedoms is presumed to constitute an irreparable injury for which monetary damages are not adequate, and injunctions protecting First Amendment freedoms are always in the public interest. (Citations.) ("The lost of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury.'")

20.     **The likelihood of success on the merits favors Plaintiffs**: "To determine whether a plaintiff has a reasonable likelihood of success on the merits, the court must assess whether the plaintiff has "a greater than negligible chance of winning...." *AM General Corp. v. DaimlerChrysler Corp.*, 311 F.3d 796, 804 (7th Cir. 2002). "When a party seeks a preliminary injunction on the basis of a potential First Amendment violation, the likelihood of success on the merits will often be the determinative factor." *Joelner v. Village of Wash. Park*, 378 F.3d 613, 620 (7th Cir. 2004).

21.     Plaintiffs have a strong probability of success of the merits. First, it is clear that Plaintiffs' rights are protected under the First Amendment. "In particular, 'oral and

written dissemination ... [of] religious views and doctrines is protected by the *First Amendment.*'" *Parks v. City of Columbus*, 395 F.3d 643, 647 (6th Cir. 2005), citing *Heffron v. Int'l Soc. For Krishna Consciousness, Inc.*, 452 U.S. 640 (1981). "Moreover, 'the hand distribution of religious tracts is an age-old form of missionary evangelism, (citation) and such activity 'has the same claim as the others to the guarantees of freedom of speech and freedom of the press....*" Parks*, at 647.

22.     Likewise, there is a long line of Supreme Court precedents

> indicating that streets and parks "have immemorially been held in trust for the use of the public and, time out of mind, have been used for purposes of assembly, communicating thoughts between citizens, and discussing public questions";

and

> noting that "public streets and sidewalks have been used for public assembly and debate, the hallmarks of a traditional public forum". *Parks*, at 649.

23.     "These cases reflect, either implicitly or explicitly, a 'forum based" approach for assessing restrictions that the government seeks to place on the use of its property."

> Under this approach, regulation of speech on government property that has traditionally been available for public expression is *subject to the highest scrutiny*. Such regulations survive only if they are *narrowly drawn to achieve a compelling state interest.*

*International Society For Krishna Consciousness, Inc. v. Lee*, 505 U.S. 672, 678 (1992) (Emphasis added.) Accordingly, in our case the city streets upon which the festival will take place this weekend are traditional public fora, and the city may only put in place reasonable time, place and manner restrictions reflecting a compelling governmental interest which is narrowly drawn to achieve that interest. *United States v. Grace*, 461 U.S. 171, 177 (1983):

> In such places, the government's ability to permissibly restrict expressive conduct is very limited: the government may enforce reasonable time, place, and manner regulations as long as the restrictions "are content neutral, are narrowly tailored to serve a significant government interest, and leave open ample alternative channels of communication.

24.     The government may not, at its own behest, seek to transform the festival streets at issue in our case into something other than traditional public fora, such as by demanding that Plaintiffs obtain a permit to enter or engage in *First Amendment* protected expressive activity:

> In *United States Postal Service v. Greenburgh Civic Assns.*, 453 U.S. 114, 133 (1981), we stated that "Congress ... may not by its own *ipse dixit* destroy the 'public forum' status of streets and parks which have historically been public forums...." The inclusion of the public sidewalks within the scope of *§131's* prohibition, however, *results in the destruction of public forum status that is at least presumptively impermissible. Traditional public forum property occupies a special position in terms of First Amendment protection* and will not lose its historically recognized character for the reason that it abuts government property that has been dedicated to a use other than as a forum for public expression. Nor may the government transform the character of the property by the expedient of including it within the statutory definition of what might be considered a nonpublic forum parcel of property.

*Grace* at 180 (Emphasis added.)

25.     Plaintiffs are willing to abide by all reasonable time, place and manner restrictions on their Free Speech and Free Exercise of Religion. Teesdale Decl., ¶¶ 57-60. But it is established that the crux of their activities are constitutionally protected on the streets at issue: speaking to individuals about Jesus, handing out tracts about Jesus, and wearing shirts and signs proclaiming His Divinity. Although Plaintiffs need only establish "a greater than negligible chance of winning", they have established a strong case which is almost certain to prevail. This element provides a compelling basis upon which to grant the TRO and preliminary injunction.

26.     **Plaintiffs will suffer irreparable harm that outweighs any harm the city will suffer if the TRO is not granted**: If the TRO is not granted, Plaintiffs will lose the opportunity to speak with the public at the festival about Jesus, the opportunity to hand out tracts, and to present the Gospel of the forgiveness of sins.  Because Plaintiffs will abide by all reasonable time, place and manner restrictions, there is no risk of disruption to any activities at the festival or harm to the city or others.  Thus, Plaintiffs have shown that they will suffer irreparable harm if the Court does not enter a TRO. *See also Joelner v. Village of Washington Park, Illinois, 378 F.3d 613, 620 (7th Cir. 2004)* (stating that "the loss of *First Amendment* freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury, . . . and money damages are therefore inadequate"); see, also *Elrod v. Burns*, "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." 427 U.S. 347, 373-374 (1976).

27.     The balancing of the harms clearly favors the Plaintiffs.  On the one hand is the city, which has an interest in keeping order on its streets and preventing disruption of activities at the festival.  But, Plaintiffs are small in number, will be engaging in activities such as handing out tracts (which is minimally intrusive—*Lee* at 505 U.S. 690[1]) and represent no threat to the public order.  On the other hand are Plaintiffs, who will lose their constitutionally protected rights if the TRO is not entered.

28.     **Plaintiff's have no adequate remedy at law**: Injunctive relief is "especially appropriate in the context of first amendment violations because of the inadequacy of money damages." *National People's Action v. Wilmette*, 914 F.2d 1008, 1013 (7th Cir. 1990).  It is difficult to quantify in monetary terms what Plaintiffs will lose if they are

---

[1] Leafletting is considered so nonintrusive that it must be allowed even on government property which is nonpublic in nature, such as at Navy Pier in Chicago.  *Chicago Acorn v. Metropolitan Pier and Exposition Authority*, 150 F.3d 695, 702-704 (7th Cir. 1998).

8

unable to attend the festival and speak to the public about Jesus. The festival is located nearby Plaintiffs' Church, and is a prime location for public evangelism for this neighborhood Church. Public evangelism is a major tenet of Garfield Ridge Baptist Church, and an opportunity and duty which is passed from generation to generation at the Church. Teesdale Decl., ¶¶ 2-4, 57. Pastor Teesdale considers it an important part of his ministry to equip the members of his Church in the skills of public evangelism. Teesdale Decl., ¶¶ 2-4. Monetary damages cannot fully compensate Plaintiffs and this element favors Plaintiffs.

29.     **Granting the TRO accords with the public interest**: "[I]t is always in the public interest to protect First Amendment liberties." *Joelner v. Village of Wash. Park,* 378 F.3d 613, 620 (7th Cir. 2004). The public interest will be enhanced by granting the TRO.

WHEREFORE, Plaintiffs request judgment as follows:

A.     That this Court issue a Temporary Restraining Order restraining Defendants, its officers, agents, employees and all other persons acting in active concert with them or any of them from obstructing or threatening to obstruct Plaintiffs from exercising their constitutionally protected rights on the public streets during the 2009 St. Symphorosa Family Fest, and further enter an Order directing Defendants to allow the distribution of Plaintiffs' religious literature with the same degree of protection with all the rights and privileges afforded similarly situated persons;

B.     That this Court adjudge, decree, and declare the rights and other legal relations of the parties to the subject matter here in controversy, in order that such declarations shall have the force and effect of final judgment;

C.    That this Court retain jurisdiction of this matter for the purpose of enforcing this Court's orders;

D.    That this Court grant such other and further relief as it deems equitable and just, including scheduling a preliminary injunction hearing if necessary.

Respectfully submitted

By: _____
Andy Norman
Noel W. Sterett
Mauck & Baker
One North LaSalle Street
Suite 600
Chicago, Illinois 60602
(312) 726-1243

F:\Clients\2807\01_Claim Against City\MotTRO.doc