IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

FRANK TEESDALE, DEBBIE TEESDALE, )
ARASELI LUNA, GLEN ZDZIARSKI, )
DIANE ZDZIARSKI, and GARFIELD )
RIDGE BAPTIST CHURCH, )
                             )
           Plaintiffs, )
                             )
      v. )      No. 09 c 4046
                             )
CITY OF CHICAGO, an Illinois )
municipal corporation, OFFICER )
JOHN SVIENTY, in both his )
official and individual )
capacities, OFFICER MEGAN )
AQUINAGA, in both her official )
and individual capacities, and )
JOHN DOES 1-10, in both their )
official and individual )
capacities, )
                             )
         Defendants. )

## OPINION AND ORDER

Plaintiffs Frank Teesdale ("Teesdale"), Debbie Teesdale,
Araseli Luna, Glen Zdziarski, Diane Zdziarski, and Garfield Ridge
Baptist Church allege that defendants interfered with their
distribution of religious literature and related proselytizing
during the July 2008 St. Symphorosa Family Fest held on the
grounds of St. Symphorosa Church and surrounding public streets.

Defendant City of Chicago issued a permit for the Fest, which permitted use of the public streets. Also named as defendants in their individual capacities are two Chicago police officers, John Svienty and Megan Aquinaga, as well as John Does 1 to 10 who are alleged to be police officers provided by the City to be security workers at the Fest.[1] Plaintiffs' Complaint states the following claims:[2] (I) interference with First Amendment freedom of speech; (II) interference with First Amendment free exercise of religion; (III) violation of Fourteenth Amendment due process; (IV) false arrest of Teesdale in violation of the Fourth Amendment; (V) violation of Fourteenth Amendment equal protection; and (VI) violation of the Illinois Religious Freedom Restoration Act ("IRFRA"), 775 ILCS 35. Plaintiffs seek monetary damages based on defendants' conduct at the 2008 Fest and injunctive and declaratory relief as to future Fests.[3]

---

[1] All the individuals are also named in their official capacities, but that is redundant of naming the City of Chicago as a defendant. See Doe v. Smith, 470 F.3d 331, 337 n.12 (7th Cir. 2006); Kendall v. Village of Maywood, 2009 WL 971422 *1 (N.D. Ill. April 9, 2009).

[2] Technically, all the federal claims are based on the Fourteenth Amendment, which applies to state actors such as municipalities and their employees and which incorporates most aspects of the Bill of Rights.

[3] The lawsuit and a motion for preliminary injunction were filed shortly before the July 2009 Fest. The motion for a preliminary junction was not ruled upon on its merits since the parties instead entered into an agreed standby order that was

Defendants move to dismiss all claims based on failure to sufficiently allege grounds for relief; failure to adequately allege municipal liability on the part of the City; and/or qualified immunity of the individual defendants.

Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." As the Court held in [Bell Atl. Corp. v.] Twombly, 550 U.S. 544 [(2007)], the pleading standard Rule 8 announces does not require "detailed factual allegations," but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. Id., at 555 (citing Papasan v. Allain, 478 U.S. 265, 286 (1986)). A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." 550 U.S., at 555. Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." Id., at 557.
To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." Id., at 570. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Id., at 556. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Ibid. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" Id., at 557 (brackets omitted).

---

entered by the court. There has been no contention that either side violated the standby order. Injunctive and declaratory relief remain at issue for future Fests.

> Two working principles underlie our
> decision in Twombly. First, the tenet that a
> court must accept as true all of the allegations
> contained in a complaint is inapplicable to
> legal conclusions. Threadbare recitals of the
> elements of a cause of action, supported by mere
> conclusory statements, do not suffice. Id.,
> at 555 (Although for the purposes of a motion to
> dismiss we must take all of the factual
> allegations in the complaint as true, we "are
> not bound to accept as true a legal conclusion
> couched as a factual allegation" (internal
> quotation marks omitted)). Rule 8 marks a
> notable and generous departure from the
> hyper-technical, code-pleading regime of a prior
> era, but it does not unlock the doors of
> discovery for a plaintiff armed with nothing
> more than conclusions. Second, only a complaint
> that states a plausible claim for relief
> survives a motion to dismiss. Id., at 556.
> Determining whether a complaint states a
> plausible claim for relief will, as the Court of
> Appeals observed, be a context-specific task
> that requires the reviewing court to draw on its
> judicial experience and common sense. 490 F.3d,
> at 157-158. But where the well-pleaded facts do
> not permit the court to infer more than the mere
> possibility of misconduct, the complaint has
> alleged--but it has not "show[n]"-"that the
> pleader is entitled to relief." Fed. Rule Civ.
> Proc. 8(a)(2).

Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949-50 (2009).

The Seventh Circuit applies a type of sliding scale

approach to plausibility. The more complex the case and more

costly potential discovery, the more detail that will be required

to satisfy the plausibility requirement. Stark Trading v.

Falconbridge Ltd., 552 F.3d 568, 574 (7th Cir. 2009); Tamayo v.

Blagojevich, 526 F.3d 1074, 1082-83 (7th Cir. 2008); Limestone

- 4 -

Dev., Corp. v. Village of Lemont, Ill., 520 F.3d 797, 803-04

(7th Cir. 2008); Nicholson v. UTi Worldwide, Inc., 2010 WL 551551

*4 (S.D. Ill. Feb. 12, 2010); Riley v. County of Cook, ___

F. Supp. 2d ___, 2010 WL 376064 *2 (N.D. Ill. Jan. 27, 2010);

Riley v. Vilsack, 665 F. Supp. 2d 994, 1003 (W.D. Wis. 2009).

As long as they are consistent with the allegations of the

Complaint, plaintiffs may assert additional facts in their

response to the motion to dismiss. See Brokaw v. Mercer County,

235 F.3d 1000, 1006 (7th Cir. 2000); Forseth v. Village of

Sussex, 199 F.3d 363, 368 (7th Cir. 2000); Marcavage v. City

of Chicago, ___ F. Supp. 2d ___, 2009 WL 4841078 *1 (N.D. Ill.

Dec. 16, 2009); Gross v. Security Assoc. Int'l, Inc., 2009 WL

3837435 *7 (N.D. Ill. Nov. 17, 2009); Burbach Aquatics, Inc. v.

City of Elgin, Ill., 2009 WL 1940787 *3 (N.D. Ill. July 7, 2009);

Brady v. Gonzalez, 2009 WL 1952774 *2 (N.D. Ill. July 2, 2009);

Williams v. Macklin, 2008 WL 4696136 *3 (N.D. Ill. Oct. 23,

2008). But compare American Civ. Liberties Union v. City of

Chicago, 2009 WL 2409907 *2 (N.D. Ill. July 31, 2009) (new

allegations successfully raised to defeat motion to dismiss must

subsequently be incorporated in an amended complaint). Under

federal pleading rules, plaintiffs are not limited to nor bound

by the legal characterizations of their claims contained in the

Complaint. A claim can survive as long as the facts alleged

would support relief.  See McCullah v. Gadert, 344 F.3d 655,

659 (7th Cir. 2003); Forseth, 199 F.3d at 368; Kirksey v. R.J.

Reynolds Tobacco Co., 168 F.3d 1039, 1041 (7th Cir. 1999);

LaRoe v. Cassens & Sons, Inc., 472 F. Supp. 2d 1041, 1047

(S.D. Ill. 2006).  In response to a motion to dismiss,

however, the legal basis for a claim must be identified and a

sufficient legal argument made in support of it.  Kirksey,

168 F.3d at 1041-42; Lekas v. Briley, 405 F.3d 602, 614-15

(7th Cir. 2005); Jacobeit v. Rich Twp. High Sch. Dist. 227,

___ F. Supp. 2d ___, 2009 WL 4349536 *3 (N.D. Ill. Nov. 25,

2009); Hays v. Bardasian, 615 F. Supp. 2d 796, 798-99 (N.D. Ind.

2009).

     Taking plaintiffs' allegations and the reasonable

inferences therefrom as true, the facts assumed to be true for

purposes of ruling on defendants' motion to dismiss include the

following.  The five individual plaintiffs are all members of

plaintiff Garfield Ridge Baptist Church.[4]  Plaintiffs hold

sincere religious beliefs.  A tenet of their religious beliefs is

that they must tell others about Jesus.  Plaintiffs' primary

means of accomplishing this is through public distribution of

religious literature and one-on-one discussion with members of

_____

     [4]Where apparent from the context, the term "plaintiffs"
will be used to refer only to the individual plaintiffs.

the public. This often consists of distributing tracts on public sidewalks.

From July 10 to 13, 2008, the St. Symphorosa Family Fest was held. It was sponsored by the St. Symphorosa Parish, a Roman Catholic church. A special event application was filed with the City of Chicago Office of Special Events and approved. The Fest was held on Parish grounds and the surrounding streets. At least two streets bordering Parish grounds were closed to vehicular traffic, but open to pedestrians attending the Fest. The Fest was open to the general public and no admission fee was charged. By arrangement with the Chicago Police Department, Chicago police officers were retained to provide security for the Fest. Some of the events at the Fest, including musical performances, used sound amplification.

On Saturday July 12, plaintiffs and other members of their church, including three children, attended the Fest. They had Gospel tracts to hand out, a megaphone for preaching, a sign or signs, and a banner. A Fest sign indicated that no outside beverages were permitted at the Fest. As the group entered the Fest, Teesdale asked a police officer if a small personal water bottle was permitted. When asked if he was a member of event staff, Teesdale responded that he was not and that he was there to tell a gospel message about Jesus. The police officer did not

stop the group from entering and advised Teesdale that he did not think the water bottle would be a problem.

Plaintiffs proceeded to hand out tracts as they walked through the Fest looking for a good spot to unfurl their banner and hand out tracts. They did not interfere with pedestrian flow. Before they found a suitable spot, plaintiffs were stopped by John Does 1-3, police officers wearing St. Symphorosa "SECURITY" shirts. Doe 1 told them they were not allowed to hand out their tracts at the Fest. Teesdale responded that the Fest was a great opportunity to share their gospel message with those that might not attend a church. Doe 1 stated "they [the festival goers] all go to church and didn't need [plaintiffs'] tracts." He told them to leave the Fest or face arrest. No alternative location within or outside the Fest was suggested by the officer. Teesdale argued the group had First Amendment rights to distribute their message at the Fest. Doe 1 claimed the event was authorized by a City permit and the Fest was only open to those who had obtained a permit.

Teesdale believed he had a First Amendment right to speak. He began to turn on his megaphone. Before Teesdale could speak, Doe 1 took the megaphone and placed Teesdale under arrest. Teesdale was handcuffed and escorted to a spot just outside Fest grounds. Doe 1 radioed for officers to escort Teesdale to a

police station.  A half hour later, defendants Svienty and

Aquinaga arrived to take Teesdale to a station.  It is expressly

alleged that Doe 1 told the other two defendants the reason for

Teesdale's arrest and Svienty then stated to Teesdale, "You talk

that bull****?!"  Teesdale was taken to a police station, placed

in a holding cell, and held until the evening.  He was charged

with one count of criminal trespass to land in violation of

720 ILCS § 5/21-3(a)(2), and released on bond.  On May 21, 2009,

after Teesdale invoked his speedy trial rights, the criminal case

was dismissed with prejudice for lack of a speedy trial.

As to some claims, defendants do not expressly raise that

the claim itself is not adequately stated.  Instead, they raise

qualified immunity as to the individuals and failure to

adequately allege a municipal policy, practice, or custom as to

the City.  On a motion to dismiss, "two questions are pertinent

to the defense of qualified immunity:  whether the facts alleged

show that the state actor violated a constitutional right, and

whether that right was clearly established."  Hanes v. Zurick,

578 F.3d 491, 493 (7th Cir. 2009) (citing Pearson v. Callahan,

129 S. Ct. 808, 816 (2009); Saucier v. Katz, 533 U.S. 194, 201

(2001)).  While the practice had been to address these questions

in the aforementioned order, see Saucier, supra, the present rule

is that it is within the district court's discretion to determine

- 9 -

the appropriate order that best suits the case before it.  See

Pearson, 129 S. Ct. at 818-21; Whitlock v. Brown, ___ F.3d ___,

2010 WL 624307 *1 (7th Cir. Feb. 24, 2010); Gonzalez v. City of

Elgin, 578 F.3d 526, 540 (7th Cir. 2009); Hanes, 578 F.3d at 493;

Baird v. Renbarger, 576 F.3d 340, 344 (7th Cir. 2009).  The

individual defendants urge the court to decide the "clearly

established" question first.  The present motion to dismiss,

however, is not an appropriate situation for taking that

approach.  By first determining the contours of any adequately

alleged constitutional violation, the municipal liability

allegations may be viewed in appropriate context, as well as the

"clearly established" step of the qualified immunity analysis.

Additionally, determining the contours of the primary claims

could be helpful in determining if another claim is duplicative

as defendants contend.  Before addressing the qualified immunity

or municipal liability issue as to a particular claim, it will

first be determined whether a particular claim is adequately

alleged.

The parties agree that it is clearly established that

religious speech is generally protected by the First Amendment.

They also agree that, even with the Fest going on, the public

streets being used for the Fest remained public fora at which the

City could impose only reasonable time, place, and manner

restrictions. As long as the outside speakers are not speaking
in a manner that gives the impression that they are speaking on
behalf of the official event, only reasonable time, place, and
manner restrictions may be imposed. See Startzell v. City of
Philadelphia, Pa., 533 F.3d 183, 193-96 (3d Cir. 2008) (anti-gay
protestors at a gay pride event held on closed-off streets of a
predominantly gay neighborhood); Gathright v. City of Portland,
Or., 439 F.3d 573 (9th Cir. 2006) (evangelical Christian preacher
wearing signs and passing out literature at permitted events in
public parks); Parks v. City of Columbus, 395 F.3d 643 (6th Cir.
2005) (walking through Arts Festival with sign containing
religious message); Mahoney v. Babbitt, 105 F.3d 1452 (D.C. Cir.
1997) (anti-abortion banners critical of president along
inaugural parade route); Concealed Carry, Inc. v. City of
Chicago, 2006 WL 2860975 *5-6 (N.D. Ill. Sept. 28, 2006) (pro-gun
speakers rallying at the same time as anti-gun speakers were
holding a permitted rally at a plaza outside federal buildings);
World Wide Street Preachers' Fellowship v. Peterson, 2004 WL
1622272 (S.D. Ind. May 14, 2004), appeal dismissed as moot,
388 F.3d 555 (7th Cir. 2004) (religious leafleting during 500
Festival Parade in Indianapolis). See also Chicago Acorn v.
Metropolitan Pier & Exposition Auth., 150 F.3d 695, 702-04 (7th
Cir. 1998) (leafleting at walkways, open areas, and mall area of

Navy Pier, which is not a public forum). "[T]ime, place and manner restrictions over protected speech are valid, even in public forums, as long as three requirements are met: (1) the restrictions are justified without reference to the content of the regulated speech, (2) they are narrowly tailored to serve a significant governmental interest, and (3) they leave open ample alternative channels for communication of the information." Concealed Carry, 2006 WL 2860975 at *6 (citing Ward v. Rock Against Racism, 491 U.S. 781, 791 (1989)). An adequate alternative need not be the speaker's first or best choice or provide the same audience and impact as desired by the speaker; it just needs to be adequate and generally target the same audience. Gresham v. Peterson, 225 F.3d 899, 906-07 (7th Cir. 2000). Reasonable restrictions would include prohibiting amplified speech such as with a megaphone that drowns out the permitted events and prohibiting conduct that blocks pedestrian or vehicular traffic or causes other safety concerns. See Startzell, 533 F.3d at 196-202; Concealed Carry, 2006 WL 2860975 at *6-8; Peterson, 2004 WL 1622272 at *10-13. Generally, leafleting is minimally intrusive and it generally must be permitted in a public area even if not a public forum, as long as there is not undue interference with pedestrian or vehicular traffic. Acorn, 150 F.3d at 703; Peterson, 2004 WL 1622272

at *12.  Here, however, a difference may exist because of the
intended use of signs and a banner.

     As of July 2008, it was well established that, even in a
non-public forum such as Navy Pier, leafleting must be allowed as
long as it does not interfere with pedestrian or vehicular
traffic.  Plaintiffs allege they caused no such interference at
the Fest which, on the facts alleged, was a public forum.  Taking
the facts alleged as true, it was a violation of plaintiffs'
clearly established rights to prohibit them from distributing
leaflets within the Fest.  Also, it is expressly alleged that no
defendant offered plaintiffs the alternative of leafleting at
entrances to the Fest so it is unnecessary at this point to
determine if that would be a reasonable place restriction or if
not, whether the law on that issue was clearly established in
2008.  It is alleged that Teesdale was specifically stopped from
using a megaphone.  On the limited facts alleged, it is unclear
whether his potential use of the megaphone would have unduly
interfered with events at the Fest.  On the facts alleged,
restrictions on using the megaphone cannot be resolved on a
motion to dismiss as reasonable time, place, and manner
restrictions.  At least, on the facts alleged, as against certain
Doe defendants, Counts I and II allege claims that are supported
by clearly established law.

Defendants Svienty and Aquinaga were not directly involved in removing plaintiffs from the Fest grounds or preventing the speech of any plaintiff except possibly Teesdale. Teesdale is the only plaintiff who could have any claim against these two defendants. Teesdale's primary claim against these two defendants is the Count IV Fourth Amendment false arrest claim. It is also possible that Teesdale has valid First Amendment claims against them based on the arrest interfering with Teesdale's ability to continue to speak at the Fest. Svienty and Aquinaga argue they cannot be held responsible for an improper arrest because they only provided transportation to the police station after Doe 1 placed Teesdale under arrest. See Morfin v. City of East Chicago, 349 F.3d 989, 1000-01 (7th Cir. 2003) (citing Maltby v. Winston, 36 F.3d 548, 559 (7th Cir. 1994)). However, it is expressly alleged that Svienty and Aquinaga were informed as to facts forming the basis for the arrest and commented on the facts. That was not the situation in Morfin or Maltby. The limited facts known to the transporting officer in Maltby were insufficient to make a determination that Maltby had been improperly arrested. See Maltby, 36 F.3d at 558-59. Here, the allegations support that Svienty and Aquinaga were aware that Teesdale was arrested for leafleting and trying to use a megaphone at the Fest. It was well established, as of July 12,

- 14 -

2008, that an officer has a constitutional duty to intervene to prevent an unlawful arrest by another officer if the officer is informed of the facts that establish a constitutional violation and has a realistic opportunity to prevent it. <u>Sornberger v. City of Knoxville, Ill.</u>, 434 F.3d 1006, 1019 (7th Cir. 2006); <u>Morfin</u>, 349 F.3d at 1001. <u>See also</u> <u>Montano v. City of Chicago</u>, 535 F.3d 558, 569 (7th Cir. 2008) (citing <u>Morfin</u>, <u>supra</u>).[5] As on-duty officers--the precise status of the Doe officers working security is unclear--called to transport Teesdale, it is reasonable to infer that Svienty and Aquinaga may have had a realistic opportunity to prevent further custody of Teesdale and therefore may be held responsible for an unlawful arrest of Teesdale. Therefore, as to these two individual defendants, as well as any of the Does involved in the arrest, it must be determined whether Teesdale's arrest was unlawful.

To succeed on his false arrest claim, Teesdale must adequately allege

> that probable cause for his arrest was lacking. <u>See</u> <u>Kelley v. Myler</u>, 149 F.3d 641, 646 (7th Cir. 1998) ("An essential predicate to any § 1983 claim for unlawful arrest is the absence of probable cause."). If probable cause to arrest is found to exist, it "is an absolute defense to any claim under Section 1983 against police officers for wrongful arrest." <u>Mustafa v. City</u>

---

[5]<u>Montano</u> was issued on July 23, 2008, shortly after the events at issue in the present case.

of Chicago, 442 F.3d 544, 547 (7th Cir. 2006).
Police officers possess probable cause to arrest
when "'the facts and circumstances within their
knowledge and of which they have reasonably
trustworthy information are sufficient to warrant
a prudent person in believing that the suspect
had committed' an offense." Id. (quoting Kelley,
149 F.3d at 646). Probable cause is not
evaluated by the court based upon "the facts as
an omniscient observer would perceive them," but
instead is determined by the facts "as they would
have appeared to a reasonable person in the
position of the arresting officer." Id. (quoting
Kelley, 149 F.3d at 646; citing Woods v. City of
Chicago, 234 F.3d 979, 987 (7th Cir. 2000)).

Williams v. Rodriguez, 509 F.3d 392, 398-99 (7th Cir. 2007). The

probable cause may be as to any crime, even if it is different

from the crime invoked by the officers at the time of the arrest.

Devenpeck v. Alford, 543 U.S. 146, 153 (2004). An arresting

officer's subjective intent is irrelevant. An arresting

officer's state of mind is only relevant regarding the pertinent

facts of which he or she would have knowledge. Id.

Teesdale alleges that he was charged with one

count of criminal trespass to land in violation of 720 ILCS

5/21-(3)(a)(2).[6] Defendants, though, contend they had probable

cause to arrest Teesdale for a violation of subsection (3)(a)(3),

which prohibits "remain[ing] upon the land of another, after

---

[6]Presumably this is the statute cited. The Complaint
actually cites to § 5/21-3-A-2, which does not exist. See Compl.
¶ 75.

receiving notice from the owner or occupant to depart."[7] The
statute further provides that a "person has received notice from
the owner or occupant within the meaning of Subsection (a) if he
has been notified personally, either orally or in writing . . .
or if a printed or written notice forbidding such entry has been
conspicuously posted or exhibited at the main entrance to such
land or the forbidden part thereof." Id. § (3)(b). The notice
need not be delivered directly from the owner of the property,
it can be received from security personnel or law enforcement
personnel. See People v. Yutt, 231 Ill. App. 3d 718, 597 N.E.2d
208, 212, 213-15 (3d Dist. 1992); United States v. Kincaid,
212 F.3d 1025, 1029 (7th Cir. 2000); Marcavage v. City of
Chicago, 635 F. Supp. 2d 829, 842 (N.D. Ill. 2009)
("Marcavage II"). The Complaint alleges and Teesdale
concedes that Doe 1 told him to leave.

Teesdale, however, contends there was no basis for
arresting him for trespass because he was on public land not
private land. Defendants contend that, even if this is true,
there is no Illinois case law making it clear that a person

---

[7]The statute cited by defendants would be consistent with
the allegation that Teesdale was told to leave after being in the
Fest. Subsection (3)(a)(2) prohibits "enter[ing] upon the land
of another after receiving, prior to such entry, notice from the
owner or occupant that such entry is forbidden." In any event,
as previously stated, defendants need not rely on the crime that
was invoked at the time of the arrest.

- 17 -

cannot trespass on public property for which a municipality has granted a permit for it to be used by a private entity.[8]  The allegations of the Complaint, however, are that the Fest was fully open to the public.  Although Doe 1 allegedly made a contrary statement that the event was only open to those granted a permit, plaintiffs' allegations that the event was fully open to the public must presently be taken as true.  In that circumstance, it is possible that neither the Doe defendants or the named individual defendants had a reasonable basis for believing the Fest sponsors or employees could exclude plaintiffs absent interference with the Fest.  Even if there is some question on this issue that could support a right to exclude or, at least, support qualified immunity, factual development is necessary and the issue cannot be resolved on a motion to dismiss.

The Count IV false arrest claim by Teesdale will not be dismissed.  Also, since Svienty and Aquinaga were aware that Teesdale was being arrested to prevent him from engaging in First Amendment rights, Count I and II claims may proceed as against these two defendants.  The Count I and II claims against these two defendants are construed as only being brought by Teesdale.

---

[8]Defendants do not dispute the general principle that there cannot be a trespass on government land that is open to the public.

Defendants contend Count III, which defendants construe as a substantive due process claim, should be dismissed as duplicative of Count I.  Plaintiffs offer no argument in response to defendants' contention, stating only that they will stand on their pleadings and will need discovery before clarifying this claim.  In response to a motion to dismiss, however, plaintiffs must provide a legal argument supporting their claim. Kirksey, 168 F.3d at 1041-42; Lekas, 405 F.3d at 614-15; Jacobeit, ___ F. Supp. 2d at ___, 2009 WL 4349536 at *3; Hays, 615 F. Supp. 2d at 798-99.  Since they provide no legal argument, Count III will be dismissed as against all defendants.

Defendants move to dismiss the Count V equal protection claim on the ground that plaintiffs have not sufficiently identified any of the other persons who allegedly were treated more favorably.  Plaintiffs allege:

> 124.  Defendants' actions against Plaintiffs substantially burden Plaintiffs' constitutional rights in an arbitrary and capricious manner by discriminating among similarly situated persons who are allowed to distribute leaflets and hold signs in the traditional public fora which Defendants maintain.
> 125.  Others at the same event were permitted to engage each other in discussion and other forms of verbal and non-verbal communication and were free from interference from Defendants.
> * * *
> 128.  Defendants' actions against Plaintiffs constitute a violation of Plaintiffs' right to equal protection because the action fosters viewpoint and content-based decisions by allowing

> discretionary decisions and permitting other
> persons and groups to express their speech rights
> without constraint.

Compl. ¶ 124-25, 128.  It is also alleged that "[o]ther people at
the event, including the event organizers and musicians, were
using sound amplification equipment," while Teesdale was
prevented from using a megaphone.  Id. ¶ 53-54.  Additionally, it
is alleged that Doe 1 told plaintiffs they did not have the right
to convey their message because, unlike the event organizers,
plaintiffs had no permit.  Id. ¶ 51.

Following Twombly and Iqbal, what constitutes sufficient
allegations of plausibility is not always clear.  See Vilsack,
665 F. Supp. 2d at 998-1004; Wade v. Morton Bldg., Inc., 2010 WL
378508 *4-6 (C.D. Ill. Jan. 27, 2010).

> The bottom line for the court of appeals
> seems to be that "the height of the pleading
> requirement is relative to circumstances."
> Cooney v. Rossiter, 583 F.3d 967, 971 (7th
> Cir. 2009).  Phrased more specifically, the
> plausibility standard has its most force when
> special concerns exist about the burden of
> litigation on the defendant or when the theory
> of the plaintiff seems particularly unlikely.
> E.g., id. ("[T]he plaintiff must meet a high
> standard of plausibility" when alleging "a vast,
> encompassing conspiracy").  However, in the
> ordinary case, the burden remains low.  So long
> as the plaintiff avoids using legal or factual
> conclusions, any allegations that raise the
> complaint above sheer speculation are sufficient.
> This view is supported by Erickson [v. Pardus],
> 551 U.S. 89 [(2007)], a case involving a
> run-of-the-mill prisoner claim of inadequate
> medical care in which the Court did not even

discuss whether the claim was "plausible" and
stated that the heightened pleading required by
the court of appeals "depart[ed] in [a] stark
. . . manner from the pleading standard mandated
by the Federal Rules of Civil Procedure."

<u>Vilsack</u>, 665 F. Supp. 2d at 1003-04.

In some equal protection and statutory discrimination
cases, courts have required more specific identification of
comparables while other cases have not. <u>See, e.g.</u>, <u>id.</u> at 1004
(ADEA claim sufficient without identifying similarly situated
younger employees who were treated more favorably); <u>Wade</u>, 2010 WL
378508 at *5 (in support of Equal Pay Act claim, plaintiff had to
alleged some information identifying a similarly situated male
employee who was allegedly paid more); <u>Garth v. City Of Chicago</u>,
2009 WL 3229627 *5 (N.D. Ill. Oct. 2, 2009) (it was sufficient to
conclusorily allege that stop of motorist was motivated by race);
<u>Labella Winnetka, Inc. v. Village of Winnetka</u>, 2009 WL 721136 *4
(N.D. Ill. March 18, 2009) (equal protection claim that restaurant
was treated differently as to building code enforcement needed to
be supported by identification of similarly situated restaurants
that were treated more favorably); <u>Hu v. City of Chicago</u>, 2009 WL
635522 *2 (N.D. Ill. March 12, 2009) (conclusory allegation that
building permit was revoked because of owner's national origin
held sufficient).

In response to the motion to dismiss, plaintiffs are not clear as to the nature of their equal protection claim.  They cite to Marcavage v. City of Chicago, 467 F. Supp. 2d 823, 832 (N.D. Ill. 2006) ("Marcavage I"), for the proposition that alleging a city policy treats the speech of one group differently from the speech of another group is sufficient to state an equal protection claim.  In that case, however, it was "specifically alleged that Marcavage was singled out and arrested because of the content of his speech pursuant to Chicago policy, while others occupying the same sidewalk outside of Wrigley Field at the same time were allowed to continue similar activity expressing an opposite viewpoint."  Id.[9]  Here, plaintiffs do not allege that they were singled out based on the content of their speech,[10] nor do they allege that others similarly situated (but expressing differing views) were permitted to engage in speech

_____

[9]Since Marcavage I precedes Twombly, it does not necessarily state current pleading requirements.  In any event, it is distinguishable for the reasons discussed in the text.

[10]The Complaint contains conclusory allegations of restrictions based on content and viewpoint, see Compl. ¶¶ 94-95, 126, 128, but the facts alleged do not include that any of the defendant officers took any action based on the content or viewpoint of plaintiffs' speech.

activities.[11]  Instead, plaintiffs state in response to the
motion to dismiss:

> 34.  Plaintiffs have specifically alleged
> that the City of Chicago permit issued to St.
> Symphorosa Parish for Family Fest 2008 and
> Plaintiffs' lack of a permit was the reason given
> for their removal from the public streets, Pastor
> Teesdale's arrest, and their disparate treatment
> from that of all the other individuals and groups
> at the Family Fest 2008.  Compl. ¶¶ 51-54.
> 35.  While Plaintiffs were told that they
> had to leave and Plaintiff Pastor Teesdale was
> arrested, the general public and others,
> including St. Symphorosa parishioners and
> representatives, were allowed to continue similar
> activity and exercise their first amendment
> rights on the public thoroughfares at issue.
> Compl. ¶¶ 54, 124-125.

Pl. Answer to Mot. to Dismiss [20] at 9.

"An equal protection violation occurs only when different
legal standards are arbitrarily applied to similarly situated
individuals." Marcavage II, 635 F. Supp. 2d at 841-42 (quoting
Smith v. Severn, 129 F.3d 419, 429 (7th Cir. 1997)).  Accord
Startzell, 533 F.3d at 203.  As previously stated, there are no

---

[11]Although not mentioned in response to the motion to
dismiss, in ¶ 124 of the Complaint plaintiffs conclusorily allege
that similarly situated persons in other "traditional public
fora" in the City are allowed to distribute leaflets.  First,
this allegation could only pertain to the City, not any of the
individual defendants.  Second, while the Fest grounds were still
a public forum, the Fest is not similarly situated to traditional
public fora for which no permit has been granted to a private
group.  Third, to meet the Iqbal standard in this situation,
plaintiffs would have to provide at least some additional facts
regarding these other purportedly similarly situated public fora.

allegations of similarly situated speakers who were treated differently. There is no allegation that other attendees, not part of the official Fest activities, attempted to pass out literature. There are no facts alleged supporting that other attendees were similarly situated nor the nature of other attendees' speech. To the extent plaintiffs are focusing on the distinction between a speaker having or not having a permit, other attendees who were not part of the official program would not be speaking based on a permit. Plaintiffs do allege the distinction that, unlike the Fest organizers and official participants, plaintiffs were not engaging in speech pursuant to a permit. Plaintiffs do not identify the nature of the speech that these people engaged in other than to refer to musical performances and some use of amplification. In any event, the fact that plaintiffs did not have a permit and the others did precludes the two groups from being similarly situated and therefore fails to state an equal protection claim. Startzell, 533 F.3d at 203; Concealed Carry, 2006 WL 2860975 at *9. Count V will be dismissed in its entirety.

IRFRA provides: "Government may not substantially burden a person's exercise of religion, even if the burden results from a rule of general applicability, unless it demonstrates that application of the burden to the person (i) is in furtherance of a compelling governmental interest and (ii) is the least

restrictive means of furthering that compelling governmental interest." 775 ILCS 35/15. For present purposes, IRFRA is materially identical to provisions of the federal Religious Land Use and Institutionalized Persons Act of 2000, 42 U.S.C. § 2000cc et seq., so cases as to both statutes can be cited interchangeably. Diggs v. Snyder, 333 Ill. App. 3d 189, 775 N.E.2d 40, 44-45 (5th Dist. 2002); World Outreach Conference Ctr. v. City of Chicago, 591 F.3d 531, 533 (7th Cir. 2009). A substantial burden is a governmental action that prevents a person from engaging in conduct or having a religious experience that the person's faith mandates. Diggs, 775 N.E.2d at 45; Marcavage I, 467 F. Supp. 2d at 833. The requirement that the burden be substantial must be taken seriously or the statute could be interpreted to exempt religious organizations from ordinary regulation. World Outreach, 591 F.3d at 539. The term substantial is relative; "whether a given burden is substantial depends on its magnitude in relation to the needs and resources of the religious organization in question." Id. To be a substantial burden, the government action must represent a coercive choice that places substantial pressure on the adherent to change his or her beliefs. See Diggs, 775 N.E.2d at 45; Vision Church v. Village of Long Grove, 468 F.3d 975, 997 (7th Cir. 2006); Family Life Church v. City Of Elgin, 561 F. Supp. 2d 978, 987 (N.D. Ill. 2008).

Plaintiffs allege they were prevented from disseminating their religious message at a particular location on one afternoon. They were not prohibited from delivering their message elsewhere. There is no allegation that they would have been stopped from engaging in the same conduct just outside the entrance to the Fest. On the present allegations, it must be accepted that distributing the literature and otherwise conveying their religious message is a mandate of plaintiffs' faith. However, in light of the limited time period and area in which plaintiffs were prevented from disseminating their message, the allegations do not support a plausible claim that plaintiffs' exercise of their religion was substantially burdened.[12] Count VI will be dismissed.

Still to be considered is whether there are sufficient allegations of municipal liability to support the Count I, II, and IV claims against the City. To succeed on their claims against the City, plaintiffs must adequately allege that the constitutional violations "occurred because of '(1) the enforcement of an express policy of the City, (2) a widespread

---

[12]This ruling is arguably inconsistent with <u>Marcavage I</u>, 467 F. Supp. 2d at 833. That case did not hold that preventing literature distribution on one day outside a particular event was necessarily a substantial burden. It only held that it was a factual issue that could not be resolved on a motion to dismiss. This court respectfully disagrees, particularly in light of the currently applicable pleading standard.

practice that is so permanent and well settled as to constitute a custom or usage with the force of law, or (3) a person with final policymaking authority.'" Justice v. Town of Cicero, 577 F.3d 768, 773 (7th Cir. 2009) (quoting Latuszkin v. City of Chicago, 250 F.3d 502, 504 (7th Cir. 2001)). A direct causal link between the policy and constitutional violation must be adequately alleged and the policy must be a moving force behind the violation. Estate of Sims ex rel. Sims v. County of Bureau, 506 F.3d 509, 514-15 (7th Cir. 2007). A plaintiff need not plead evidence, but there must be sufficient facts alleged to both give fair notice of the basis for the official capacity claim and show that such a claim is plausible rather than merely speculative. See id.; Reger Dev. LLC v. National City Bank, 592 F.3d 759, 764 (7th Cir. 2010); Tamayo, 526 F.3d at 1084; Hunt v. Dart, 2010 WL 300397 *4 (N.D. Ill. Jan. 22, 2010); Ellis v. City of Chicago, 2010 WL 310777 *4-5 & n.2 (N.D. Ill. Jan. 20, 2010); Ingram v. Wisconsin Employees, 2009 WL 1871779 *4 (E.D. Wis. June 26, 2009).

Plaintiffs do not allege other instances of persons being prevented from speaking at other festivals. Therefore, their claim against the City is not based on a widespread custom or practice. In response to the motion to dismiss, plaintiffs explicitly state there is no contention that official liability

is based on an express policy.  See Pl. Answer to Mot. to Dismiss
[20] at page 5, ¶ 18.

Although not actually stated in the Complaint, in
response to the motion to dismiss, plaintiffs contend they have
alleged a policy of the Mayor emanating from the Mayor's Office
of Special Events.  It is contended that this policy "either gave
Special Event permittees, such as St. Symphorosa, the right to
keep individuals or groups outside the parameters of their event
or required groups or individuals [other than the event sponsors]
to obtain a permit before they could engage in their first
amendment activity within the parameters of City of Chicago
special events such as Family Fest 2008."  Id. ¶ 17.  Such a
contention, however, is facially inconsistent with plaintiffs'
factual allegations supporting their First Amendment and false
arrest theories, which are in part based on the streets being
used for the Fest remaining public fora because still fully open
to all members of the public.  Also, as to the Count IV Fourth
Amendment claim, there is no causal link alleged between this
policy and Teesdale's arrest.  In any event, policymaking
officials of the City of Chicago are generally limited to being
the Mayor and members of City Council.  Civil Liberties for Urban
Believers v. City of Chicago, 342 F.3d 752, 764 (7th Cir. 2003).
Policymaking authority, though, can also be delegated or assigned
to other officials or bodies.  See, e.g., Waters v. City of

Chicago, 580 F.3d 575, 581 (7th Cir. 2009) (Chicago City Council

has delegated, to the Commissioner of Human Resources, final

authority for promulgating personnel policies); Gates v. Towery,

507 F. Supp. 2d 904, 919 (N.D. Ill. 2007) (City Council and

Police Board have final policymaking authority for the Chicago

Police Department). Plaintiffs cite no statute, ordinance,

regulation, or case law supporting that the Office of Special

Events has been delegated the Mayor's or City Council's final

policymaking authority regarding special events. Plaintiffs also

do not allege that the Mayor was personally responsible for the

alleged special events policy. Therefore, any such special event

policy could not be a basis for the City's liability.

     In the Complaint, plaintiffs allege:

> 86. Defendant City of Chicago and the City
> of Chicago Police Department have failed to
> provide proper training to their subordinates
> on the issue of the freedom of speech in
> traditional public forums such as the public
> streets at issue herein at City of Chicago
> Special Events, which has contributed to the
> violation of the Plaintiffs' constitutional
> rights and the rights of others not before the
> court.

Compl. ¶ 86.

     This conclusory allegation is insufficient to plausibly

support that any failure to train contributed to the violation of

plaintiffs' rights. See S.J. v. Perspectives Charter Sch.,

___ F. Supp. ___, 2010 WL 502752 *6 (N.D. Ill. Feb. 9, 2010);
Hodge v. County of Delaware, 2009 WL 3415131 *4 (S.D. Ind.
Oct. 16, 2009); Brach v. City of Wausau, 617 F. Supp. 2d 796,
805 (W.D. Wis. May 22, 2009). Plaintiffs argue this general
allegation must be considered along with the allegations that the
City issues permits allowing the use of public streets, the City
provided security personnel for the Fest, and plaintiffs were
prohibited from exercising their First Amendment rights.
That, however, still is no more than alleging one instance of
interference with First Amendment rights, which is not enough to
infer a deliberately indifferent failure to train caused the
constitutional violation. Cf. S.J., ___ F. Supp. ___, 2010 WL
502752 at *6 (a single isolated incident of wrongdoing is
insufficient to infer wrongdoing was caused by a policy of a
failure to train).

Plaintiffs also argue that the City's opposition to
their motions for a temporary restraining order and preliminary
injunction shows that the City's official policy is that
plaintiffs could be prohibited from leafleting at the Fest.[13]
The City's opposition to preliminary relief, however, is based on
facts outside the Complaint. The City's opposition was primarily
based on being able to impose a neutral time, place, and manner

---

[13]Again, this asserted policy goes only to the First
Amendment claims, not the Count IV false arrest claim.

restriction permitting plaintiffs to convey their message outside
Fest grounds.  It is also based on the contention that the Fest
was not fully open to members of the public to distribute other
messages which could interfere with the Fest.[14]  Regardless, the
City's 2009 views as to the appropriateness of preventing
plaintiffs from disseminating their views on Fest grounds does
not provide a causal link to preventing them from speaking at the
2008 Fest.  It was only after being sued that the City expressed
its views as to plaintiffs' speech at the Fest.  There is no
indication that the City took an official position on the issue
prior to or at the time of the 2008 Fest.  Therefore, this
allegation does not support the necessary causal link for the
City's liability for the 2008 events.  The City's litigation
position, however, does show that it takes the position that
plaintiffs can be prevented from distributing their literature
and otherwise speaking at future Fests.[15]  As to Counts I and II

_____

[14]The City also contended it would be appropriate to
restrict the distribution of anti-Catholic literature at a Fest
sponsored by a Catholic church.

[15]The City contends its opposition to preliminary relief
should not be considered because not incorporated in the
Complaint.  As was set forth supra, facts raised by plaintiffs in
response to the motion to dismiss can be considered even if not
contained in the Complaint, as long as the new facts are
consistent with the allegations of the Complaint.  The City does
not contend that the views stated on behalf of the City by the
City's attorneys do not represent the official views of the City
itself.

only, plaintiffs may proceed as against the City limited to a request for equitable relief.

Separate from a direct claim against the City, plaintiffs contend the City should remain in the case because it may be obliged to indemnify the officers' individual liability. To the extent damages claims remain as against the individual defendants, plaintiffs may proceed on an indemnity claim against the City. See Alfano v. City of Spring Valley, 2008 WL 4491958 *9 (C.D. Ill. Sept. 29, 2008). However, a separate claim to this effect must be pleaded unless the City stipulates to indemnify the individual defendants if found to be liable.

The only remaining claims are (a) the Counts I, II, and IV claims against the individual defendants, and (b) the Counts I and II claims for equitable relief as against the City. Defendants will be required to answer the remaining allegations of the Complaint. This case will be referred to the assigned magistrate judge to attempt to settle this case.[16] If the case cannot be settled, discovery should be promptly completed. At the next status hearing, the parties shall advise the court whether settlement is likely and, if not, submit a proposed discovery plan.

----

[16]The Standby Order agreed to by the parties may provide a basis for equitable issues resolution.

- 32 -

IT IS THEREFORE ORDERED that defendants' motion to dismiss [18] is granted in part and denied in part.  Counts III, V, and VI are dismissed.  All claims against the City are dismissed except Count I and II claims for equitable relief. Within two weeks, defendants shall answer the remaining allegations of the Complaint.  A status hearing will be held on May 6, 2010 at 11:00 a.m.  This case will be referred to the assigned magistrate judge to conduct a settlement conference.

ENTER:

_William T. Hart_
UNITED STATES DISTRICT JUDGE

DATED:  MARCH 17, 2010

- 33 -