

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| FRANK TEESDALE, DEBBIE TEESDALE, ARASELI LUNA, GLEN ZDZIARSKI, DIANE ZDZIARSKI, and GARFIELD RIDGE BAPTIST CHURCH, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | No. 09 C 4046 |
| CITY OF CHICAGO, an Illinois municipal corporation, OFFICER JOHN SVIENTY, in both his official and individual capacities, OFFICER MEGAN AQUINAGA, in both her official and individual capacities, and JOHN DOES 1-10, in both their official and individual capacities, | ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

## **OPINION AND ORDER**

Plaintiffs Frank Teesdale ("Teesdale"), Debbie Teesdale, Araseli Luna,

Glen Zdziarski, Diane Zdziarski, and Garfield Ridge Baptist Church alleged that

defendants interfered with their distribution of religious literature and related

proselytizing during the July 2008 St. Symphorosa Family Fest held on the

grounds of St. Symphorosa Church and surrounding public streets. This included

arresting Teesdale, allegedly without probable cause, for trespassing at the Fest.

Defendants alternatively contend probable cause existed to arrest Teesdale for

disorderly conduct based on using a bullhorn. Defendant City of Chicago issued a

permit for the Fest, which permitted use of the public streets. Also named as

defendants in their individual capacities[1] are two Chicago police officers, John

Svienty and Megan Aquinaga (hereinafter "individual defendants" or "Defendant

Officers").[2] Following a ruling on defendants' motion to dismiss, *see* Order dated

March 17, 2010 [docket entry 24] ("***Teesdale I***"), and the subsequent filing of the

First Amended Complaint, the remaining claims are (I) interference with freedom

of speech; (II) interference with free exercise of religion; (IV) false arrest of

Teesdale in violation of the Fourth Amendment; and (VII) a claim, based on

745 ILCS 10/9-102  that the City is required to indemnify any damages awarded

---

[1]All the individuals are also named in their official capacities, but that is redundant. The City of Chicago is a defendant. *See **Doe v. Smith***, 470 F.3d 331, 337 n.12 (7th Cir. 2006); ***Kendall v. Vill. of Maywood***, 2009 WL 971422 *1 (N.D. Ill. April 9, 2009).

[2]Also listed as defendants are John Does 1-10, who include off-duty Chicago police officers working security at the Fest. Although some or all of the Does have since been identified, plaintiffs never named any additional police officers as defendants. The John Does will now be dismissed.

against the Defendant Officers in their individual capacities.[3] It was previously held that the remaining individual capacity claims against Defendant Officers are only on behalf of Teesdale and for damages. *See Teesdale I*, at 14, 18. It was also held that, other than the indemnity claim, the remaining claims against the City are limited to Count I and II claims for declaratory and equitable relief. *Id.* at 26-32.

Presently pending are defendants' motion for summary judgment seeking the dismissal of all remaining claims and plaintiffs' motion for partial summary judgment as to equitable relief against the City. On a motion for summary judgment, the entire record is considered with all reasonable inferences drawn in favor of the nonmovant and all factual disputes resolved in favor of the nonmovant. *Crawford v. Metro. Gov't of Nashville & Davidson Cty., Tenn.*, 129 S. Ct. 846, 849 n.1 (2009); *Malen v. MTD Prods., Inc.*, 628 F.3d 296, 303 (7th Cir. 2010); *Stokes v. Bd. of Educ. of City of Chicago*, 599 F.3d 617, 619 (7th Cir. 2010). The burden of establishing a lack of any genuine issue of material

---

[3]The lawsuit and a motion for preliminary injunction were filed shortly before the July 2009 Fest. The motion for a preliminary junction was not ruled upon on its merits. The parties instead entered into an Agreed Standby Order that was entered by the court. There has been no contention that either side violated that standby order nor a subsequent one pertaining to the 2010 Fest. Injunctive and declaratory relief remain at issue for future Fests.

fact rests on the movants. *Ponsetti v. GE Pension Plan*, 614 F.3d 684, 691

(7th Cir. 2010); *Outlaw v. Newkirk*, 259 F.3d 833, 837 (7th Cir. 2001). The

nonmovants, however, must make a showing sufficient to establish any essential

element for which they will bear the burden of proof at trial. *Celotex Corp. v.*

*Catrett*, 477 U.S. 317, 322 (1986); *Montgomery v. Am. Airlines, Inc.*, 626 F.3d

382, 389 (7th Cir. 2010). The movant need not provide affidavits or deposition

testimony showing the nonexistence of such essential elements. *Celotex*, 477 U.S.

at 324; *Freundt v. Allied Tube & Conduit Corp.*, 2007 WL 4219417 *2 (N.D. Ill.

Nov. 29, 2007); *O'Brien v. Encotech Constr.*, 2004 WL 609798 *1 (N.D. Ill.

March 23, 2004). Also, it is not sufficient to show evidence of purportedly

disputed facts if those facts are not plausible in light of the entire record.

*See* *Lorillard Tobacco Co. v. A & E Oil, Inc.*, 503 F.3d 588, 594-95

(7th Cir. 2007); *Yasak v. Ret. Bd. of Policemen's Annuity & Benefit Fund of*

*Chicago*, 357 F.3d 677, 679 (7th Cir. 2004); *Lampley v. Mitcheff*, 2010 WL

4362826 *6 (N.D. Ind. Oct. 27, 2010). As the Seventh Circuit has summarized:

> The party moving for summary judgment carries the
> initial burden of production to identify "those portions of the
> pleadings, depositions, answers to interrogatories, and
> admissions on file, together with the affidavits, if any, which
> it believes demonstrate the absence of a genuine issue of
> material fact." *Logan v. Commercial Union Ins. Co.*, 96 F.3d

971, 978 (7th Cir. 1996) (citing *Celotex Corp. v. Catrett*,
477 U.S. 317, 323, 106 S. Ct. 2548 (1986) (citation and
internal quotation omitted)).  The moving party may discharge
this burden by "'showing'--that is, pointing out to the district
court--that there is an absence of evidence to support the
nonmoving party's case." *Celotex*, 477 U.S. at 325, 106 S. Ct.
2548.  Once the moving party satisfies this burden, the
nonmovant must "set forth specific facts showing that there is
a genuine issue for trial." Fed. R. Civ. P. 56(e).  "The
nonmovant must do more, however, than demonstrate some
factual disagreement between the parties; the issue must be
'material.'" *Logan*, 96 F.3d at 978.  "Irrelevant or unnecessary
facts do not preclude summary judgment even when they are
in dispute." *Id.* (citation omitted).  In determining whether the
nonmovant has identified a "material" issue of fact for trial,
we are guided by the applicable substantive law; "[o]nly
disputes that could affect the outcome of the suit under
governing law will properly preclude the entry of summary
judgment." *McGinn v. Burlington Northern R.R. Co.*,
102 F.3d 295, 298 (7th Cir. 1996) (citation omitted).
Furthermore, a factual dispute is "genuine" for summary
judgment purposes only when there is "sufficient evidence
favoring the nonmoving party for a jury to return a verdict for
that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,
249, 106 S. Ct. 2505 (1986).  Hence, a "metaphysical doubt"
regarding the existence of a genuine fact issue is not enough
to stave off summary judgment, and "the nonmovant fails to
demonstrate a genuine issue for trial 'where the record taken
as a whole could not lead a rational trier of fact to find for the
non-moving party . . . .'" *Logan*, 96 F.3d at 978 (quoting
*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*,
475 U.S. 574, 587, 106 S. Ct. 1348 (1986)).

*Outlaw*, 259 F.3d at 837.

Except where otherwise noted below, material facts are not in dispute so the same facts may be considered for both the City's and plaintiffs' summary judgment motions. Plaintiffs do not seek summary judgment as against Defendant Officers so the evidence pertinent to the damages claims against them will be construed in plaintiffs' favor and all genuine disputes resolved in plaintiffs' favor for purposes of ruling on the Defendant Officers' summary judgment motion.

The City makes no argument regarding the merits of the First Amendment claims.[4] It contends plaintiffs cannot show that there is a municipal policy to prohibit the speech at issue. The City also contends plaintiffs lack standing to seek equitable relief because there is an insufficient likelihood of future interference with the speech at issue.

Often, persons, who in the past allegedly have been improperly prosecuted, arrested without probable cause, or subjected to misconduct related to

---

[4]Arguments made on behalf of Defendant Officers also do not address the merits of whether Teesdale's First Amendment rights were violated. Defendant Officers contend they were not involved in stopping Teesdale from speaking or, alternatively, had probable cause to arrest him or are entitled to qualified immunity because the law regarding Teesdale's arrest is not clearly established. While Defendant Officers contend the pertinent law is not clearly established, they make no contention as to what the law should be. In any event, arguments regarding qualified immunity apply only to the individual defendants. Although contained in a single brief filed by all the defendants, any arguments pertaining only to qualified immunity are not on behalf of the City itself even if it indirectly affects the City due to possible indemnification.

an arrest (*e.g.*, excessive force or improper detention), lack standing to seek equitable relief because it cannot be assumed that they will again be similarly prosecuted, arrested, or (even if again arrested) again subjected to the related misconduct. *See Schirmer v. Nagode*, 621 F.3d 581, 585-86 (7th Cir. 2010) (collecting cases). For First Amendment claims, however, the likelihood of further enforcement or another arrest need not be as high a possibility as for the Fourth Amendment or due process examples collected in *Schirmer*. In the First Amendment context, where a "chill" is sufficient to interfere with speech, standing may be supported by the plaintiff's intent to engage in a particular type of speech and that speech arguably falling within the prohibitions of a statute, regulation, or policy. *Id.* at 587. A "credible threat" of enforcement is sufficient to support standing for a pre-enforcement First Amendment challenge. *Holder v. Humanitarian Law Project*, 130 S. Ct. 2705, 2717 (2010); *Schirmer*, 621 F.3d at 586.

Factors to consider in determining whether there is a credible threat of enforcement include: "1. whether the plaintiffs have articulated a concrete plan to violate the law in question; 2. whether the prosecuting authorities have communicated a specific warning or threat to initiate proceedings; and 3. the history of past prosecution or enforcement under the challenged statute." *San*

*Luis & Delta-Mendota Water Auth. v. Salazar*, ___ F.3d ___, 2011 WL 1086598 *6 (9th Cir. March 25, 2011) (quoting *Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d 1134, 1139 (9th Cir. 2000) (en banc)). Standing is lacking if the intended speech clearly falls outside the scope of the pertinent statute, rule, or policy. Even if a person was previously arrested for engaging in the same speech, standing is lacking if the arrest clearly falls outside the parameters of the pertinent rule and there is no showing of a pattern of similar improper enforcements. *Schirmer*, 621 F.3d at 587-88. Past isolated misuse of a statute to arrest someone engaging in speech will not, by itself, support standing to seek prospective injunctive relief preventing further interference with speech. *Id.* at 588.

Here, there is possible tension between Teesdale's false arrest damages claim and his and the other plaintiffs' claims for First Amendment equitable relief. If it is clear that the First Amendment activity he and the others again want to engage in falls outside the scope of trespass, disorderly conduct, or any other legal prohibition, plaintiffs may lack standing to seek equitable relief because there is an insufficient probability any of them are at risk of police officers again interfering with one or all of them engaging in such activity. Teesdale's damages claim, though, may fail based on qualified immunity unless there is clearly established

- 8 -

law that Teesdale's past activity does not violate the pertinent statutory prohibitions. Consistent with *Schirmer*, the conflict could be avoided by contending that the speech activity falls outside the scope of the pertinent prohibitions, but the City may have a pattern of arresting people for similar conduct that does not constitute trespassing or disorderly conduct. Plaintiffs do not present evidence that such a pattern has occurred, but they do raise a related contention. They contend again having their First Amendment activity interfered with is a sufficient possibility because, subsequent to Teesdale's arrest, the City contended that plaintiffs' desired First Amendment activity is not permitted on Fest grounds. Plaintiffs rely on litigation positions previously taken in this case to establish that this is the City's official stance.

This case was filed three days before the July 2009 Fest began. Two days before the Fest began, plaintiffs filed and served a motion for temporary restraining order and preliminary injunction which they presented in court on the same day that the four-day 2009 Fest began. The day after the filing of that motion, the City filed its opposition to preliminary relief. Docket Entry [10]. In that opposition, the City argued that it "did not violate the First Amendment by enforcing its permit scheme to allow St. Symphorosa to hold its permitted event and to allow it to exclude the Plaintiffs who wished to convey a message

antithetical to St. Symphorosa or the Catholic Church. The Plaintiffs could convey their message elsewhere or at another time or outside of the boundaries of the permit granted to St. Symphorosa. . . . [T]he City has a significant interest in preserving St. Symphorosa's right to have its message heard, rather than the anti-Catholic sentiments of Plaintiffs." *Id.* at 6-7. The City noted that plaintiffs had the available alternative of leafletting just outside the Fest. *Id.* at 7. When subsequently moving to dismiss the Complaint, the City did not address the merits of First Amendment issues pertaining to Counts I and II, arguing only that those counts should be dismissed as against the City based on a failure to adequately allege municipal liability. Memo. in Support (Docket Entry [19]) at 4-7; Reply (Docket Entry [22]) at 2-7. In ruling on the motion to dismiss, it was held that plaintiffs failed to adequately allege that being stopped from speaking at the 2008 Fest was pursuant to a policy or custom of the City, so the damages claims against the City were dismissed. *Teesdale I*, at 26-31. Relying on the allegation that the City's opposition to preliminary relief was an expression of the City's official view as of 2009, it was held that it was adequately alleged that, as of 2009, the City had a policy that plaintiffs could be excluded from expressing themselves at future Fests. Therefore, the equitable relief claims contained in Counts I and II were not dismissed. *Id.* at 30-32.

Here, plaintiffs have a concrete plan to again leaflet at the 2011 Fest,

something Teesdale and all or some of the other plaintiffs, plus additional church

members, have done at each of the past three Fests. In 2008, plaintiffs' expression

was interrupted and then discontinued when Teesdale was detained by Fest

security and then subsequently placed under arrested by Defendant Officers. In

2009 and 2010, plaintiffs acted under the terms of Agreed Standby Orders, Docket

Entries [12] & [44], without interferences when leafletting and expressing their

views on Fest grounds. Under the terms of the Standby Orders, plaintiffs did not

use a bullhorn or sound amplification, they were limited to one banner, and the

size of signs was limited. Plaintiffs do not intend to use sound amplification in the

future. As set forth above, in this litigation, the City took the position that

plaintiffs should be prevented from expressing themselves at the 2009 Fest and

that it would be lawful to exclude them from Fest grounds. Since its initial

opposition, the City has avoided expressly taking a position as to whether or not

plaintiffs' intended speech on Fest grounds can lawfully be stopped. It is telling,

though, that the City has not stated that, absent another court order (standby or

otherwise), it would not provide police support to stop plaintiffs' expression on

the grounds of the Fest. Cf. *Humanitarian Law*, 130 S. Ct. at 2717 ("The

Government has not argued to this Court that plaintiffs will not be prosecuted if

they do what they say they wish to do."). On these facts, a credible threat remains that the City would interfere with plaintiffs' planned expression. Plaintiffs have standing to pursue their equitable relief claims against the City. The City contends Garfield Church itself lacks standing because the members who seek to engage in expression at the Fest are already plaintiffs. The undisputed facts, however, are that nine persons have engaged in expression at the last two Fests, which would include persons who are not named plaintiffs. The Church will not be dismissed.

Separate from, but factually related to, the standing requirement, plaintiffs cannot obtain equitable relief against the City unless it is shown that the exclusion from speaking at future Fests would be pursuant to an official action of the City. *Los Angeles Cnty., Cal. v. Humphries*, 131 S. Ct. 447, 449 (2010). In support of their own summary judgment motion and in opposition to the City's motion for summary judgment, plaintiffs rely on the City's previously discussed opposition to preliminary relief as showing that the current policy of the City is that the permit it issues for the Fest allows such exclusion. The City contends this is an inadequate showing that it has such a policy, both as an evidentiary matter and because the City's attorneys are not policymakers.

The parties agree that the City's attorneys are not themselves policymakers. But just as the City can delegate to particular City officials

policymaking authority on specific issues, *see Vodak v. City of Chicago*, ___ F.3d

___, 2011 WL 905727 *7 (7th Cir. March 17, 2011); *Teesdale I*, at 28-29, it can

designate officials to take official positions and actions on behalf of the City itself,

*Teesdale I*, at 31. By ordinance, the City has delegated to its Corporation Counsel

the power and duty to "(a) Superintend and, with his assistants and clerks, conduct

all the law business of the city; [and] (b) Appear for and protect the rights and

interests of the city in all actions, suits and proceedings brought by or against

it . . . ." Chicago Municipal Code § 2-60-020(a)-(b). Moreover, the City (not its

attorneys) is the party in this case. While the briefs are written by the attorneys, it

is the brief of the City, not the attorneys personally. As was held in ruling on the

City's motion to dismiss, as of 2009, it was the official position of the City that it

could stop plaintiffs' expression on Fest grounds. In light of that and the City's

failure to thereafter take a contrary position,[5] it can be inferred that this is still the

_____

[5]The City points to a footnote in its Reply in support of its motion to
dismiss, in which it was responding to plaintiffs' then-contention that the City's
opposition to preliminary relief constituted an official position of the City. The
City asserted: "the City's Opposition does not admit that there is an
unconstitutional express policy of prohibiting street preaching." Docket Entry
[22] at 4, n.3. This statement does not assert that it had not been or that it no
longer was the City's position that plaintiffs could be prohibited from proselytizing
on Fest grounds. It is instead an ambiguous statement that the City's policy was
not unconstitutional, the prior opposition did not constitute an admission, and/or
there was no express policy regarding street preaching in general. The City has
never withdrawn the position it took when this case was first filed, nor has it ever

City's official position. Therefore, the City is not entitled to summary judgment on the asserted ground that plaintiffs cannot show an official policy of the City that would interfere with their speech.

As was stated in **Teesdale I**, at 11-13, plaintiffs could be stopped from speaking in a manner that indicated they were speaking on behalf of the official event; in a manner or location that blocked pedestrian or vehicular traffic or caused other safety concerns; or by using amplification that would drown out official Fest events. On summary judgment, it is uncontested that plaintiffs' plans for future expression at the Fest would not cause any such disruptions. They will not use any amplification, they will avoid interfering with traffic, and there is no evidence their use of signs will cause any such interference. Plaintiffs do not oppose the time, place, and manner terms of the Agreed Standby Orders. Pl. Summ. Jmt. Memo. [51-2] at 12.

On plaintiffs' summary judgment motion, it must be conclusively established--that is, that there is no genuine factual dispute--that the City's current policy is that outside groups like plaintiffs can be excluded from nondisruptive leafletting and speaking at permitted events like the Fest that are open to the

---

expressly stated--other than on a temporary standby basis to avoid further litigating preliminary relief--that it would not interfere with plaintiffs' further attempts to engage in expression at the Fest.

general public.  As previously discussed, the only evidence on this issue is the

City's prior position taken in 2009.[6]  The clear implication of entering into standby

orders only is that the City continues to contend it can lawfully stop plaintiffs'

proposed expression.  The only reasonable inference to be drawn is that the City

has not changed from the position it took in July 2009.  On plaintiffs' summary

judgment motion, it is taken as true that, absent a court order, the City has a policy

that would result in enforcing the exclusion of plaintiffs from engaging in their

planned speech at future Fests.

The undisputed facts regarding the Fest and plaintiffs' proposed speech

are not materially different from those alleged in plaintiffs' Complaint.  For the

reasons set forth in *Teesdale I*, at 10-13, the City cannot constitutionally prevent

plaintiffs from engaging in such speech.  Plaintiffs are entitled to relief as against

_____

[6]Plaintiffs contend the statements in the opposition to preliminary
injunction constitute judicial admissions, which have the effect of withdrawing a
fact from contention.  The statements in the City's opposition that are relied upon,
however, are legal arguments.  Legal arguments and opinions are not a basis for
judicial admissions.  Judicial admissions are limited to statements that certain facts
are not at issue.  *See McCaskill v. SCI Mgmt. Corp.*, 298 F.3d 677, 681-82
(7th Cir. 2002); *Eli Lilly & Co. v. Valeant Pharm. Int'l*, 2011 WL 573761 *3
(S.D. Ind. Feb. 15, 2011).  As previously indicated, the pertinent fact is that, in
2009, the City itself took the position that it could stop plaintiffs from
proselytizing on the grounds of the Fest.  That is evidence as to the City's official
views.  The legal merits of that view and even the underlying legal arguments are
not pertinent, just the fact that the City's official position was that it could stop
such speech and whether that continues to be the City's official position.

the City. Declaratory relief will be granted. There is no need to issue an

injunction as well. *See Dickinson v. Ind. State Election Bd.*, 933 F.3d 497, 503

(7th Cir. 1991); *Doe v. Prosecutor, Marion Cnty., Ind.*, 566 F. Supp. 2d 862, 888

(S.D. Ind. 2008).

For purposes of ruling on Defendant Officers' motion for summary

judgment, all reasonable inferences are drawn and all genuine factual disputes are

resolved in Teesdale's favor. The remaining damages claims concern Teesdale's

leafletting and proselytizing at the 2008 Fest. Raymond Kolasinki, an off-duty

police officer who is not a defendant in this case, was the chief of Fest security. It

is undisputed that Kolasinki stopped Teesdale from speaking and removed him to

outside Fest grounds. There is evidence that Teesdale was told to leave and

refused to do so. Defendant Officers were called to the scene and placed Teesdale

under arrest based on information provided by Kolasinki and Fest business

manager Joseph Dillon. It is undisputed that Defendant Officers did not witness

Teesdale's activity on Fest grounds nor participate in removing Teesdale from the

grounds. Defendant Officers' alleged misconduct is based on placing Teesdale

under arrest in reliance on information provided to them by the Fest personnel, as

well as any statements made by Teesdale before arresting him. Defendant Officers

contend they cannot be liable for interfering with Teesdale's First Amendment

rights because they did not remove him from the Fest grounds, they were unaware

of his speech activity, and they otherwise had grounds to arrest him. They contend

they had probable cause to arrest Teesdale for criminal trespass or disorderly

conduct.

The police report for Teesdale's arrest states he was preaching with a

bullhorn and told to leave. Svienty testified that Dillon or Kolasinki showed both

Defendant Officers tracts that were being distributed by Teesdale. At his

deposition, Svienty could not recall the content of the tracts other than that they

included cartoons. Nevertheless, having seen the tracts and in light of the

reference in the police report to preaching, it is a reasonable inference that the

officers were aware Teesdale had been distributing religious leaflets and speaking

on religious topics. On defendants' summary judgment motion, it is taken as true

that both Defendant Officers had information that Teesdale had been engaging in

religious speech, including distributing tracts and using a bullhorn. Teesdale

contends he was stopped by Kolasinki before actually using the bullhorn, but the

evidence supports Defendant Officers were informed he actually used it.

Regardless of Defendant Officers' knowledge of Teesdale's expressive

activity or any related motivation to interfere with his speech, Teesdale's First

Amendment claims against Defendant Officers fail if the officers had probable

cause for an arrest. *Currier v. Baldridge*, 914 F.2d 993, 996 (7th Cir. 1990);[7]

*Watkins v. Chicago Police Officers*, 1996 WL 66128 *1 n.1 (N.D. Ill. Feb. 13,

1996); *Howard v. Muller*, 1993 WL 369321 *2 (N.D. Ill. Sept. 20, 1993). *See*

*also Rossetti v. Wascher*, 2011 WL 824599 *10 (N.D. Ill. March 3, 2011)

(alternative holding that probable cause precludes a claim of retaliatory arrest for

engaging in protected speech, but noting split of authority). Probable cause is also

a defense to the Count IV false arrest claim. *Mucha v. Vill. of Oak Brook*,

___ F.3d ___, 2011 WL 489617 *2 (7th Cir. Feb. 14, 2011).

> Probable cause exists if "at the time of the arrest, the facts and circumstances within the officer's knowledge are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Gonzalez v. City of Elgin*, 578 F.3d 526, 537 (7th Cir. 2009) (citing *Michigan v. DeFillippo*, 443 U.S. 31, 37 (1979)). Probable cause requires only that a probability or substantial chance of criminal activity exists; it does not require the existence of criminal activity to be more likely true than not true. *See Purvis v. Oest*, 614 F.3d 713, 722-23 (7th Cir. 2010); *Mannoia v. Farrow*, 476 F.3d 453, 457 (7th Cir. 2007). In evaluating probable

---

[7]This 1990 case is the only Seventh Circuit case defendants cite in support of this proposition. (Defendants also cite *Hartman v. Moore*, 547 U.S. 250 (2006), but that is a retaliatory prosecution case. They also cite *Redd v. City of Enter.*, 140 F.3d 1378, 1383 (11th Cir. 1998), but the facts of that case also included that, although the plaintiff was engaging in protected speech at the time of his arrest, the arrest was unrelated to the speech.) Teesdale does not cite any contrary case nor even address this issue.

cause, we look only to the information known to the officer
at the time of arrest, and we view the circumstances of the
arrest from the perspective of a reasonable person in the
position of the officer. *Gonzalez*, 578 F.3d at 537.

*Id.* at *3.

Probable cause is an objective standard based on the information known

to the officer at the time of the arrest. *Devenpeck v. Alford*, 543 U.S. 146, 153

(2004); *United States v. Garcia-Garcia*, 633 F.3d 608, 612 (7th Cir. 2011);

*Jackson v. Parker*, 627 F.3d 634, 638 (7th Cir. 2010); *Carmichael v. Vill. of

Palatine, Ill.*, 605 F.3d 451, 457 (7th Cir. 2010). "[A]n arresting officer's state of

mind (except for the facts that he knows) is irrelevant to the existence of probable

cause." *Devenpeck*, 543 U.S. at 153. An arrest is not invalid because the arresting

officer was maliciously motivated. *Id.* at 154; *Mucha*, ___ F.3d at ___, 2011 WL

489617 at *3. "Subjective intent of the arresting officer, however it is determined

(and of course subjective intent is always determined by objective means), is

simply no basis for invalidating an arrest. Those are lawfully arrested whom the

facts known to the arresting officers give probable cause to arrest." *Devenpeck*,

543 U.S. at 154-55. *See also Jackson*, 627 F.3d at 638; *Carmichael*, 605 F.3d

at 457; *Mustafa v. City of Chicago*, 442 F.3d 544, 547 (7th Cir. 2006).

Regarding the adequacy of the investigation undertaken prior to

effecting an arrest:

> The law gives a police officer latitude to make reasonable
> judgments in light of the circumstances. While an officer may
> not close his or her eyes to clearly exculpatory facts, the
> Fourth Amendment does not require an officer with probable
> cause to arrest to wait while pursuing further investigation.
> . . . In some situations, an officer may be required to conduct
> some investigation before making an arrest; in others, an
> officer may have probable cause for arrest without any need
> for investigation. Relevant factors include the information
> available to the officer, the gravity of the alleged crime, the
> danger of its imminent repetition, and the amount of time that
> has passed since the alleged crime.

*Stokes*, 599 F.3d at 624-25. *See also* *Guzell v. Hiller*, 223 F.3d 518,

520 (7th Cir.2000); *Reardon v. Wroan*, 811 F.2d 1025, 1028 (7th Cir. 1987).

Defendant Officers contend they had probable cause to arrest Teesdale

for criminal trespass to property in violation of 720 ILCS 5/21-3(a)(3) which

prohibits "remain[ing] upon the land of another, after receiving notice from the

owner or occupant to depart." Defendants contend probable cause is supported by

Kolasinki's report to them that Teesdale was "on our property" and refused to

leave and Dillon's willingness to sign a criminal complaint.

It is uncontested that Kolasinki and Teesdale were already outside the

Fest grounds when Defendant Officers arrived. It is also uncontested that

- 20 -

Kolasinki told Defendant Officers that Teesdale was "on our property" and Kolasinki wanted him arrested because Teesdale had been asked to not use his bullhorn to preach inside the Fest, but refused to do so. Teesdale contends the use of "on our property" is ambiguous and does not necessarily mean on the grounds of the Church itself as defendants contend. Teesdale also contends there is a factual dispute as to whether the officers had been told that Teesdale had been asked to leave, which is a necessary element of the subsection (a)(3) offense.

The officers testified that they thought the Fest was a private permitted event from which persons could be excluded.[8] Also, the arrest report listed a street address for the trespassing that was the address of a residence within Fest grounds, not the address of the Church. On the facts before the court, a factual dispute exists as to whether the officers had information that Teesdale had been on Church grounds, not merely information that he had been on public streets that were part of the Fest. Defendants concede Teesdale could not properly have been arrested for trespassing on public streets within the Fest area, only for refusing to leave Church property itself. Since disputed facts exist as to whether the information

_____

[8]Defendant Officers contend the arrest can be justified based on their belief that the Fest was a private permitted event. The arrest, however, occurred within site of the entrance to the Fest. A reasonable inference is that Defendant Officers were aware the event was open to the public, not a private event.

before the officers was that Teesdale was on Church grounds, Defendant Officers

are not entitled to summary judgment based on probable cause to arrest Teesdale

for trespass.

Defendant Officers also contend they had probable cause to arrest

Teesdale for disorderly conduct. The subjective intent of the officers is irrelevant,

only whether they had knowledge of facts that would support probable cause to

arrest for disorderly conduct. It does not matter that Defendant Officers did not

arrest Teesdale based on disorderly conduct or even that they did not themselves

believe Teesdale's conduct constituted disorderly conduct.

Illinois law defines the offense of disorderly conduct as including:

"knowingly do[ing] any act in such unreasonable manner as to alarm or disturb

another and to provoke a breach of the peace." 720 ILCS 5/26-1(a)(1). Whether

conduct is disorderly depends on both the conduct and the circumstances

surrounding it. *Stokes*, 599 F.3d at 622. The elements of this offense are that "the

person's conduct must (1) be unreasonable; (2) alarm or disturb another; and

(3) threaten to provoke or provoke a breach of the peace." *Reher v. Vivo*,

2010 WL 1531387 *5 (N.D. Ill. April 12, 2010). "The offense is intended to

guard against 'an invasion of the right of others not to be molested or harassed,

either mentally or physically, without justification.'" *Stokes*, 599 F.3d at 622

(quoting *People v. Davis*, 82 Ill. 2d 534, 413 N.E.2d 413, 415 (1980)).

Loudness, by itself, is not enough to constitute disorderly conduct;

instead, the surrounding circumstances must be considered. *People v. Albert*,

243 Ill. App. 3d 23, 611 N.E.2d 567, 569 (2d Dist. 1993) (quoting *City of*

*Chicago v. Wender*, 46 Ill .2d 20, 262 N.E.2d 470, 472 (1970)) ("creation and

maintenance of loud and raucous noises has always been thought to be within the

common-law definition [of disorderly conduct], but it is not the decibel level of

the utterance * * * alone that is determinative"). *Compare also Payne v. Pauley*,

337 F.3d 767, 777 (7th Cir. 2003) ("arguing with a police officer, even if done

loudly, or with profane or offensive language, will not, in and of itself constitute

disorderly conduct"); *Bass v. Hansen*, 2010 WL 5069690 (N.D. Ill. Dec. 7, 2010),

*reconsideration granted in part on other grounds*, 2011 WL 528837 (N.D. Ill.

Feb. 3, 2011) (same). The public may be protected from loud noises, particularly

in residential areas, but being loud and annoying does not constitute disorderly

conduct if it does not threaten to provoke a breach of the peace. *Albert*,

611 N.E.2d at 570. Using loud language for several minutes in the middle of the

night when there was a reasonable expectation of peace and quiet supported a

conviction for disorderly conduct. *Id.* Yelling at passing vehicles and making

- 23 -

threatening gestures at nine at night supported probable cause to arrest for

disorderly conduct. *Webb v. Lanton*, 2010 WL 2102416 *4 (N.D. Ill. May 18,

2010).

Defendant Officers were aware that Teesdale had and wanted to use a

bullhorn to preach in the midst of a street festival. Kolasinki also told them that

Teesdale's use of the bullhorn was disturbing those walking by. While the Fest

itself was not a quiet environment, even such a setting could be disturbed by a

person using a bullhorn and Defendant Officers were told that Teesdale's use was

disturbing those around him and he was given an opportunity to voluntarily stop

using it, but refused. The second element of disturbance is satisfied. Since they

were informed that others were being disturbed, the officers could infer that

Teesdale's use was unreasonable. Since a number of people were being disturbed,

they could also infer that a breach of peace was threatened. While this may not

have been sufficient evidence to convict Teesdale on a disorderly conduct charge,

defendant Officers had probable cause to arrest Teesdale for disorderly conduct.

Alternatively, in light of the broad definition of disorderly conduct and

the limited precedents regarding under what circumstances loud noise constitutes

disorderly conduct, Defendant Officers are entitled to qualified immunity because

the law was not clearly established as to whether the facts of which they had

knowledge constituted probable cause to arrest for disorderly conduct. *See Humphrey v. Staszak*, 148 F.3d 719, 727-28 (7th Cir. 1998); *Reher*, 2010 WL 1531387 at *6; *Marcavage v. City of Chicago*, 635 F. Supp. 2d 829, 846 (N.D. Ill. 2009).

Because the claims against Defendant Officers are being dismissed, the indemnity claim against the City will also be dismissed. The damages claims will be dismissed in their entirety.

IT IS THEREFORE ORDERED that plaintiffs' motion for partial summary judgment [51] is granted. Defendants' motion for summary judgment [52] is granted in part and denied in part.

(1) The Clerk of the Court is directed to enter judgment in favor of defendants and against plaintiffs dismissing all claims for damages and indemnity.

(2) The Clerk of the Court is further directed to enter a declaratory judgment in favor of plaintiffs and against defendant City of Chicago as follows:

> A. Nine or fewer members of the Garfield Ridge Church may as a group or individually enter the public streets adjacent to and upon which any St. Symphorosa Family Fest is held, during the hours in which such St. Symphorosa Family Fest is open to the public.

B. Such members may freely move about the public streets and distribute leaflets to others at the Fest.

C. Such members may speak to individuals in attendance at the Fest but not use a bullhorn or other sound-enhancing devices.

D. Such members may display one banner not to exceed four feet by three feet and may carry non-pole signs not to exceed three feet by two feet.

ENTER:

William T. Hart
UNITED STATES DISTRICT JUDGE

DATED: MAY 26 , 2011