IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| FRANK TEESDALE, et al., | ) | |
| Plaintiffs, | ) | Judge William T. Hart |
| | ) | |
| v. | ) | Magistrate Judge Nan R. Nolan |
| | ) | |
| CITY OF CHICAGO, | ) | No. 09 CV 4046 |
| Defendant. | ) | |

## PLAINTIFFS' MOTION FOR FEES AND COSTS THROUGH 8/23/11

### I.    INTRODUCTION AND EXHIBITS.

Plaintiffs have prevailed against the City of Chicago by virtue of the

Court's May 26, 2011 declaratory judgment pertaining to their rights at the annual St.

Symphorosa Festival (the "Fest"). Plaintiffs' goal to talk to others about Jesus on the

public streets of Chicago at the Fest each July presents a textbook Free Speech rights

case, which the City should have conceded at the outset. Instead, the City's ongoing

refusal to concede plaintiffs' rights forced a two year battle to establish the merits. In

denying the City's motion to reconsider the Court noted:

> You could have mooted this case if you had agreed that they have a right
> to pass out their leaflets on the streets of the City of Chicago. You could
> have saved all the time and effort that's been involved in this case.

Mot. to Reconsider Hr'g Tr. 2:18-21, June 30, 2011 attached as Exhibit D.

Plaintiffs and their attorneys Mauck & Baker, pursuant to FED R. CIV. P.

54(d) and LR54.3, now seek attorneys' fees and costs under 42 U.S.C. § 1988. In support

this motion, Plaintiffs have attached the parties' LR54 joint statement as Exhibit A,

Itemized Statements of Fees and Costs (with a summary table) as Exhibits B, B1, and B2,

the Declaration of Andy Norman as Exhibit C (w/supporting exhibits C1 and C2), the

Declaration of John Mauck as Exhibit E (w/supporting exhibit E1), the Declaration of

Noel W. Sterett as Exhibit F (w/supporting exhibit F1), the Declaration of Cynthia

Cunningham as Exhibit G, and Plaintiffs' legal service agreements as Group Exhibit H.

II.     PLAINTIFFS ACHIEVED "EXCELLENT RESULTS" AND
        "SUBSTANTIAL RELIEF" AS CONTEMPLATED BY *HENSLEY*.

   A.     Injunctive or declaratory relief always has been the primary claim in
          this case. The damages claim, although part of the common core of
          facts, always was subsidiary.

          Since the day of filing (July 6, 2009) plaintiffs' case has had one main

objective: to obtain injunctive or declaratory relief protecting the six plaintiffs' rights to

proclaim Jesus on the public streets of the St. Symphorosa Festival each July in future

years. The original complaint contained 142 paragraphs. Of these, 140 (excepting only

¶¶ 20 and 80 pertaining to damages) laid the factual and legal predicates for obtaining

injunctive and declaratory relief, establishing that one of the church's main religious

tenets was the duty of each member to tell others on the public ways about the

forgiveness of sins through Jesus, in keeping with the Great Commission of Matt. 28:18-

20; and that the United States Constitution and Illinois law protected plaintiffs' activities

on the public streets of the Fest. Only injunctive or declaratory relief could further this

central church tenet as to future Fests, and that was plaintiffs' primary focus from the

beginning. All six counts in the original complaint sought injunctive/declaratory relief:

Count I (*Freedom of Speech*), Count II (*Free Exercise of Religion*), Count III (*Due

Process*), Count IV (*Unreasonable Seizure*), Count V (*Equal Protection*) and Count VI

(*Illinois Religious Freedom Restoration Act*). The damages claim for Pastor Teesdale

was a subset under Count IV, and the remaining plaintiffs under Counts I, II and VI for

the chilling of their expressive rights.

The prayers for relief at pp. 20-21 of the original complaint had the same arch-focus on injunctive/declaratory relief to protect plaintiffs' rights to proclaim Jesus on the public streets at future St. Symphorosa Fests. (1) Relief request A sought a permanent injunction (as modified in the Amended Complaint) to ensure that plaintiffs could proclaim Jesus at the 2010 and future Fests. (2) Relief request B sought a declaratory judgment that defendants' actions in preventing plaintiffs from sharing Jesus on the public streets of the Fests was unconstitutional. (3) Relief request C sought a declaratory judgment that arresting, or threatening arrest, while plaintiffs proclaimed Jesus on the public streets of the Fest was unconstitutional. The damages claim always was collateral, not being mentioned until the fourth item of relief.

Further demonstrating plaintiffs' principal focus on injunctive and declaratory relief, this case first came to the Court's attention when plaintiffs brought their emergency motion for a temporary restraining order and preliminary injunction, two days before the 2009 St. Symphorosa Fest was to begin, to prevent the City and its officers from interfering with plaintiffs' sharing Jesus on the public streets of the Fest. Further underscoring plaintiffs' principal focus on injunctive and declaratory relief, in July 2009 and again in July 2010, the parties negotiated stand-by orders, obtaining the Court's imprimatur authorizing plaintiffs to proclaim Jesus at the 2009 and 2010 Fests without the City's interference. The stand-by orders proved to be resoundingly successful. As the parties reported to the Court on each occasion, plaintiffs successfully proclaimed Jesus at both the 2009 and 2010 Fests, moving about freely, peacefully and without interruption. Again, the successful implementation of these orders reinforces the fundamental nature of plaintiffs' claim for injunctive and declaratory relief.

Thus, it is beyond dispute that this case was, from start to finish, about obtaining for plaintiffs the right to continue to proclaim Jesus on the public streets of the St. Symphorosa Festival every year into the future. ***Plaintiffs were 100% successful in their main objective***, thereby obtaining "excellent results" and "substantial relief".

As a subset to obtaining injunctive and declaratory relief as to future Fests, the complaint also sought damages under Count IV for violation of the *Fourth* (through the *Fourteenth*) *Amendment* for the false arrest of Pastor Teesdale ($8,775.00), and nominal damages ($1,000 apiece) for chilling the *First Amendment* rights of the other plaintiffs. See, ¶ 80 of both the original and amended complaints, which also includes a general request for punitive damages which never were pursued. The recovery of damages was always a small, collateral part of plaintiffs' case.[1]

On May 26, 2011, the Court entered its final order by which it provided the declaratory judgment plaintiffs all along had sought, preserving their right to proclaim Jesus on the public streets at future Fests. By obtaining the Court's declaration it is clear that plaintiffs obtained "excellent results" and "substantial relief" as contemplated by the

---

[1] All the claims in this case arose from a common core of facts arising from the single episode which took place in July 2008 on the public streets at the St. Symphorosa Fest in which the City arrested Pastor Teesdale and threw the remaining plaintiffs out of the Fest. All the allegations of the original and amended complaints supported all the claims for injunctive, declaratory, and damage relief. See, *City of Riverside v. Rivera*, 477 U.S. 561, 564 (1986) in which the complaint similarly "sought damages and declaratory and injunctive relief."

> Here the District Judge who presided throughout this protracted litigation found that the *claims of respondents rested on a "common core of facts,"* and involved related legal theories. Since the suit was *premised on one episode*, the only significant variation of the facts supporting the claims against the several defendants concerned the extent of the participation by the various police officers. MOTIONers offer no persuasive reason to question the District Court's express finding that "[the] time devoted to claims on which plaintiffs did not prevail cannot reasonably be separated from time devoted to claims on which plaintiffs did prevail."

*City of Riverside* at 584-85 (Powell J. concurring) (Emphasis added).

Supreme Court in *Hensley v. Eckerhart*, 461 U.S. 424 (1983). The Court's final order

sets the standard by which Mauck & Baker's fee request is to be adjudged:

> Where a plaintiff has obtained *excellent results*, his attorney should
> recover *a fully compensatory fee*. Normally, this will encompass *all
> hours reasonably expended on the litigation*, and indeed in some cases of
> exceptional success an enhanced award may be justified. In these
> circumstances the fee award should not be reduced simply because the
> plaintiff failed to prevail on every contention raised in the lawsuit.
> (Citation.) Litigants in good faith may raise alternative legal grounds for a
> desired outcome, and the court's rejection of or failure to reach certain
> grounds is not a sufficient reason for reducing a fee. The result is what
> matters.

*Hensley* at 435 (Emphasis added). Likewise,

> Where a lawsuit consists of related claims, a plaintiff who has won
> *substantial relief* should not have his attorney's fee reduced simply
> because the district court did not adopt each contention raised.

*Id.* at 440 (Emphasis added).

### III. IN ADDITION TO EXCELLENT RESULTS UNDER *HENSLEY*, BY OBTAINING DECLARATORY RELIEF AGAINST THE CITY PLAINTIFFS ACHIEVED A HIGHLY VALUED PUBLIC BENEFIT.

By obtaining the main relief sought, plaintiffs achieved "excellent results"

under *Hensley*, as well as, a precedent inuring to the benefit of all who exercise their *Free

Speech* rights on the public way in the City of Chicago.

> Congress expressly recognized that a plaintiff who obtains relief in a civil
> rights lawsuit "does so not for himself alone but also as a 'private attorney
> general,' vindicating a policy that *Congress considered of the highest
> importance*. (Citation.) "If the citizen does not have the resources, his day
> in court is denied him; the congressional policy which he seeks to assert
> and vindicate goes unvindicated; and *the entire Nation, not just the
> individual citizen, suffers*.

*City of Riverside*, 477 U.S. at 575 (1986) (Emphasis added).

When the Plaintiffs came to Mauck & Baker they lacked the resources to

take on the City of Chicago in major litigation, especially in light of the City's noted

policy and practice of fighting to the end and its ability to endure long legal battles. With

the incentive provided by § 1988, Mauck & Baker provided those resources and plaintiffs

won the declaratory relief they sought. In *Blanchard v. Bergeron*, 489 U.S. 87, 96 (1989)

the Supreme Court held "[u]nlike most private tort litigants, a civil rights plaintiff seeks

to vindicate important civil and constitutional rights that cannot be valued solely in

monetary terms." Likewise, the Seventh Circuit holds:

> We have recognized previously that § 1988's "overriding goal was
> to reimburse with a reasonable attorneys' fee those who as 'private
> attorneys general' take it upon themselves to *invoke and thereby*
> *invigorate federal constitutional and statutory rights.*"

*Jaffee v. Redmond*, 142 F.3d 409, 416-17 (7th Cir. 1998) (Emphasis added). Seen in this

light, it is unimportant that plaintiffs failed to obtain a collateral damage award:

> Because damages awards do not reflect fully the public benefit advanced
> by civil rights litigation, Congress did not intend for fees in civil rights
> cases, unlike most private law cases, to depend on obtaining substantial
> monetary relief.

*Dunning v. Simmons Airlines, Inc.*, 62 F.3d 863, 873 (7th Cir. 1995).

It is in this context that Mauck & Baker's fee motion should be reviewed.

All professional time reasonably expended on the litigation, whether devoted to winning

or losing claims or arguments, should be compensated fully.

## IV.   MAUCK & BAKER IS ENTITLED TO COMPENSATION FOR THEIR ATTORNEY TIME AT THE FULL LODESTAR VALUE.

The City strives to make much of plaintiffs' failure to obtain damages

against the police officers, offering that the Court should award plaintiffs *only 20% of*

*their lodestar value.* See, Exhibit A. But this flies in the face of *Hensley* and a multitude

of cases rejecting a mechanistic or mathematical reduction of attorney compensation. As

noted above, because plaintiffs obtained "excellent results" and "substantial relief",

Mauck & Baker "should recover a fully compensatory fee" and "[l]itigants in good faith may raise alternative legal grounds for a desired outcome, and the court's rejection of or failure to reach certain grounds is not a sufficient reason for reducing a fee. The result is what matters." *Hensley* at 435.

Three years after *Hensley,* the U.S. Supreme Court decided *City of Riverside* which provides strong support for Mauck & Baker's claim to an award of 100% of their requested attorney time. In *City of Riverside*, the plaintiffs sued 32 defendants (mostly police officers), alleged 256 violations of law, and sought injunctive relief, declaratory relief and damages. 477 U.S. at 589. Damages of $33,350 were awarded, against six defendants. The other 26 were dismissed on motions for summary judgment or exonerated by the jury. Plaintiffs were unsuccessful in obtaining declaratory or injunctive relief. *Id.*

The plaintiffs sought compensation for all attorney time expended, that is, the full lodestar value, on all 256 claims, and against all 32 defendants. *Id.* at 565. The District Court awarded 100% of the attorney time sought, which resulted in $245,456.25 in attorney fees. The U.S. Supreme Court affirmed, using the reasoning of *Hensley. Id.* at 581. In justifying the award of 100% of the attorney time requested by plaintiffs' attorneys, the Supreme Court held:

> *Hensley* stated that "the most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." (Citation to *Hensley* omitted.) This figure, commonly referred to as the "lodestar," is *presumed to be the reasonable fee* contemplated by § 1988.

*Id.* at 568. (Emphasis added.)

In elaborating on these precedents, the Seventh Circuit explains:

If arguments that do not contribute to a plaintiff's ultimate success were not eligible for compensation for that reason alone, then attorneys might be discouraged from raising novel but reasonable arguments in support of their clients' claims and a ***disincentive for strong advocacy could result***. The ethics of the legal profession counsel an opposite approach. See, Model Rules Of Professional Conduct Rule 1.3 cmt. 1 (1983) ("A lawyer should act with commitment and dedication to the interests of the client and with a zeal in advocacy on the client's behalf."). A lawyer who figures out the likeliest outcome in his favor, and aims only for that, is likely to fall short. ***The good lawyer aims higher, and is not improvident to do so.***

*Jaffee*, 142 F.3d at 416-17 (Emphasis added). Accordingly, Mauck & Baker's time

expended on the damages claim should be compensated fully.

The City surgically and mechanistically removes Mauck & Baker's

attorney time, bit by bit, until 80% is gone. But courts reject the City's mechanistic

approach under § 1988 when the plaintiff achieves excellent results and obtains

substantial relief:

Rare, indeed, is the litigant who doesn't lose some skirmishes on the way to winning the war. Lawsuits usually involve many reasonably disputed issues and a lawyer who takes on only those battles he is certain of winning is probably not serving his client vigorously enough; losing is part of winning. ***The County would have us scalpel out attorney's fees*** for every setback, no matter how temporary, regardless of its relationship to the ultimate disposition of the case. ***This makes little sense.***

*Cabrales v. County of Los Angeles*, 935 F.2d 1050, 1053 (9th Cir. 1991) (emphasis

added); see also, *People Who Care v. Rockford Board of Educ.*, 90 F.3d 1307, 1314 (7th

Cir. 1996):

A court's focus should not be limited to the success/failure of each of the attorney's actions. Rather, it should be upon whether those actions were reasonable. In other words, the court should not look to whether F&H "won" the 1990 appeal, but should instead look to whether the fees F&H requests for that appeal were reasonably incurred."

and *Dunning*, 62 F.3d at 873:

Litigants in good faith may raise alternative legal grounds for a desired outcome, and the court's rejection of or failure to reach certain grounds is not a sufficient reason for reducing a fee.

Mauck & Baker "should recover a fully compensatory fee" for all time reasonably expended on behalf of plaintiffs.

## V. MAUCK & BAKER'S ATTORNEY TIME ENTRIES CANNOT BE SEVERED INTO THOSE EXPENDED SOLELY ON INJUNCTIVE AND DECLARATORY RELIEF VERSUS SOLEY ON DAMAGES, BECAUSE THE ISSUES ARISE FROM A COMMON CORE OF FACT AND THE TIME RELATED TO EACH CANNOT BE SEPARATED; INSTEAD THE TIME WAS DEVOTED TO THE LITIGATION AS A WHOLE.

The City argues that attorney time devoted to damages should be removed and not compensated. But because the damages claim arose with the injunctive and declaratory claims from a common core of facts, this is impossible. *Hensley* at 435-37. When Mauck & Baker's attorney time is reviewed it is apparent that specific items of time cannot be attributed solely to the individual claims. All the time entries relate generally to the litigation as a whole and, thereby, to the successful effort to obtain injunctive and declaratory relief. The *Hensley* Court addressed this issue:

> Many civil rights cases will present only a single claim. In other cases the plaintiff's claims for relief will involve a common core of facts or will be based on related legal theories. Much of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis. *Such a lawsuit cannot be viewed as a series of discreet claims.*

*Id.* at 435 (Emphasis added).

For example, this is true even as to taking the depositions of the two police officer-defendants and engaging in other discovery. Even if had there been no damages claim in the case, the depositions would have been necessary as part of proving the claim for injunctive and declaratory relief. Proof of their arrest of Pastor Teesdale, and the

resultant chilling of the other plaintiffs' *First Amendment* rights, would have been relevant at trial to establish the need for declaratory relief. *Merriwether v. Family Dollar Stores of Indiana, Inc.*, 103 F.3d 576, 584 (7th Cir. 1996) ("the successful claim for retaliatory discharge could not have been tried effectively without reviewing and analyzing the facts that led to the underlying [unsuccessful] discrimination charge".)

Similarly, the officers' depositions were necessary to "review and analyze" a number of matters directly pertaining to the request for injunctive and declaratory relief: (1) whether, and to what extent, there was extant a City policy authorizing the arrest of citizens engaging in free speech on City streets when a City permit had been issued for a Fest; (2) to learn what the officers and St. Symphorosa officials inside the Fest grounds told the officers at the time of the arrest of Pastor Teesdale and expulsion of the other plaintiffs (i.e. plaintiffs might wish to call the officers at trial); (3) to learn what the officers claimed Pastor Teesdale and the other plaintiffs told them at the time of the arrest (i.e. the City might wish to call the officers at trial); (4) to confirm their observations of the Fest grounds—for example, that the public was freely admitted to the Fest grounds at no charge, and that all the fest-goers, rides, vendors and other attractions were located on public property within the Fest area; (5) to verify the authorship, method of creation and accuracy of the police records surrounding the arrest.

## VI. THE REQUESTED ATTORNEY AND PARALEGAL HOURLY RATES ARE REASONABLE.

The greatest factor of all in determining the reasonable hourly rates for each attorney and paralegal in this case was the risk of nonpayment each undertook in representing plaintiffs. All the attorneys faced a daunting risk of loss (i.e. non-payment) in representing plaintiffs. Each of the attorneys put in a substantial amount of attorney

time in earnestly furthering plaintiffs' case, such that plaintiffs achieved "excellent results." This should have a great effect in increasing each attorney's reasonable hourly rate above his usual, cash-paying rate.

Reference is made here to Andy Norman's Declaration, ¶¶ 14-38, at which the reasonable hourly rates for the attorneys and paralegal who worked on the case are detailed and explained, and the large risks of loss attendant to this case at the time of filing are set forth. Significantly, the hourly rates sought by Attorneys Mauck ($550), Norman ($500) and Sterett ($300) and Paralegal Cunningham ($165) already have been approved by the District Court in *Power of Praise Worship Center Church v. Village of Dixmoor*, 2011 U.S.Dist. LEXIS 33435 (N.D. Ill. 2011), with the same reasoning upon which the attorneys rely here. These rates are below the rates awarded *in 2006* in Chicago on a *First Amendment* case. See, *Entertainment Software Association v. Blagojevich*, 2006 U.S.Dist. LEXIS 93638, *7, *16 (N.D.Ill. 2006).

Courts recognize that the risk of loss (or nonpayment) of attorney's fees in a given case will put upward pressure on the attorney's hourly rate. As the Supreme Court has noted:

> No one expects a lawyer whose compensation is contingent upon
> his success to charge, when successful, as little as he would charge
> a client who in advance had agreed to pay for his services
> regardless of success.

*Pennsylvania. v. Delaware Valley Citizens' Council for Clean Air*, 483 U.S. 711, 736 (1987) (Blackmun, J., dissenting—the majority in the case did not dispute Blackmun on the point) quoting *Cherner v. Transitron Elec. Corp.*, 221 F.Supp. 55, 61 (Mass. 1963).

The Supreme Court repeatedly has emphasized that the risk of loss or nonpayment is a factor which may be considered in determining a reasonable hourly rate,

and that the calculations are to be made *within the lodestar*, not as a multiplier to be

added later to the lodestar. *City of Burlington v. Dague*, 505 U.S. 557, 562-63 (1992);

*Delaware Valley* at 726-27; *Blum v. Stenson*, 465 U.S. 886, 898-99 (1984).

In rejecting a contingency enhancement *in addition* to calculation of risk

of loss within the lodestar, Justice Scalia emphasized that risk of loss is validly

considered within the lodestar in *City of Burlington*:

> We note at the outset that an enhancement for contingency would
> likely duplicate in substantial part *factors already subsumed in the
> lodestar*. The risk of loss *in a particular case* (and, therefore, *the
> attorney's contingent risk*) is the product of two factors: (1) the
> legal and factual merits of the claim, and (2) the difficulty of
> establishing those merits. The second factor, however, is
> *ordinarily reflected in the lodestar* – either in the higher number
> of hours expended to overcome the difficulty, or in the higher
> hourly rate of the attorney skilled and experienced enough to do so.
> (Citation to Blum.) Taking account of it *again through lodestar
> enhancement amounts to double counting*.

505 U.S. at 562-63 (Emphasis added). Justice Scalia's emphasis on not "double

counting" the risk of loss obviously means that the Court may account for the risk of loss

at an earlier point in the lodestar calculation.

Similarly, in *Delaware Valley*, Justice White rejected a "further increase"

for the risk of loss, meaning that the risk of loss may be taken into account in determining

the lodestar:

> The reasons *a particular lawsuit* are considered to be 'risky' for an
> attorney are because of the novelty and difficulty of the issues
> presented, and because of the potential for protracted litigation.
> Moreover, when an attorney ultimately prevails in such a lawsuit,
> this success will be primarily attributable to his legal skills and
> experience, and to the hours of work he devoted to the case. *These
> factors, however, are considered by the court in determining the
> reasonable number of hours expended and the reasonable hourly
> rate for the lodestar*, and any *further increase* in this sum based
> on the risk of not prevailing would result not in a reasonable

> attorney's fee, but in a windfall for an attorney who prevailed in a
> difficult case. 483 U.S. at 726-27. (Emphasis added.)

Along the same line, in *Blum* Justice Powell held:

> The novelty and complexity of the issues presumably were fully
> reflected in the number of billable hours recorded by counsel and
> thus do not warrant an upward adjustment in a fee based on the
> number of billable hours times reasonable hourly rates. 465 U.S.
> at 898-99.

As further evidence that risk of nonpayment may be accounted within the lodestar,

Justices Scalia, White, and Powell all referenced one or more of the twelve *"Hensley*

factors" as pertaining to calculation for risk of loss. In calculating the lodestar the

District Court may consider, as appropriate, each of the *Hensley* factors. *Hensley* at 429-

30 ("The amount of the fee, of course, must be determined on the facts of each case.").

Similarly, the Seventh Circuit has recognized that the risk of nonpayment

may be considered in calculating the lodestar. The attorney's "billing rate" in the by-the-

hour, cash-paying market "is, as we have said in many other cases and reiterate today, *the*

*starting point*" in calculating a reasonable fee. *Gusman v. Unisys Corporation*, 986 F.2d

1146, 1151 (7th Cir. 1993) (Emphasis added). After reaching the "starting point" the

objective becomes to determine the reasonable hourly rate for the individual attorney in

the context of the underlying case. The cash-paying billing rate may be adjusted upward

or downward to reflect, *inter alia*, the risk of nonpayment in undertaking the case.

> The computation of hourly fees depends on the number of hours
> "reasonably expended", the hourly rate of each, the calculation of
> the time value of money (to account for delay in payment),
> *potential increases and decreases to account for risk* and the
> results obtained, and a complex of other considerations under the
> heading of "billing judgment."

*Kirchoff v. Flynn*, 786 F.2d 320, 325 (7th Cir. 1986) (Emphasis added). Likewise,

"*[i]ncreasing hourly rates for risk* and delay is one way of restoring the hourly rate a

lawyer could obtain from a paying client, and a necessary way when the base of the fees

must be the hourly rate." *Id.* at 326 (Emphasis added). See, also *Anderson v. AB*

*Painting and Sandblasting Inc.*, 578 F.3d 542, 544 (7th Cir. 2009) (Noting that

contingency is one factor "subsumed" within calculation of the reasonable hourly rate.);

*White v. McKinley*, 2009 U.S.Dist. LEXIS 24921, *23 (W.D. Mo. 2009 ("Without

arguing for a separate enhancement above the lodestar calculation, White argues that the

contingent nature of his fees justifies an hourly rate toward the higher end of the

reasonable spectrum … their contingent nature weighs in favor of granting his motion.")

    Finally, the risk of loss was increased by the likelihood (now a reality) of a

multiyear delay in receiving any payment. Accordingly, Mauck & Baker seeks payment

for their attorneys and paralegal at their current hourly rates (as awarded in *Power of*

*Praise*) for all time expended in the case, to compensate for the delay in receiving

payment. *Mathur v. Board of Trustees*, 317 F.3d 738, 744-45 (7th Cir. 2003).

## VII.  MAUCK & BAKER IS ENTITLED TO PAYMENT FOR THEIR TIME EXPENDED ESTABLISHING THEIR RIGHT TO PAYMENT, AND SEEK LEAVE TO SUBMIT A FINAL STATEMENT OF TIME WITH THE REPLY BRIEF.

    The attached schedule of attorney and paralegal time is calculated through

August 22, 2011, concurrent with the filing of this motion. Attorney time expended in

presenting and establishing the right to attorneys' fees, expenses and costs also is

compensable. *See, e.g., Bond v. Stanton*, 630 F.2d 1231, 1235 (7th Cir. 1980):

> We now assert explicitly what *Hairston* implies: prevailing plaintiffs
> under the Act are properly entitled to fee awards for time spent litigating
> their claim to fees. As the First Circuit remarked in *Lund*, 587 F.2d at 77,

"[i]t would be inconsistent with the purpose of the Fees Act to dilute a fees award by refusing to compensate the attorney for the time reasonably spent in establishing and negotiating his rightful claim to the fee."

*McGrath v. County of Nevada*, 67 F.3d 248, 253 (9th Cir. 1995); *David v. Scranton*, 633 F.2d 676, 677 (3rd Cir. 1980); *Lund v. Affleck*, 587 F.2d 75, 77 (1st Cir. 1978).

Accordingly, Mauck & Baker seeks leave to supplement their time records with additional attorneys' fees, expenses and costs incurred subsequent to August 23, 2011.

WHEREFORE, plaintiffs and Mauck & Baker request:

A.  Award Mauck & Baker attorney fees and costs as set forth herein through August 23, 2011 of $233,747.27, and as supplemented;

B.  Allow Mauck & Baker to supplement their request for attorney fees and costs together with their reply brief; and

C.  Grant other just relief.

Respectfully submitted,

/s/ Andy Norman
One of plaintiffs' attorneys

John Mauck
Andy Norman
Noel Sterett
MAUCK & BAKER
1 N. LaSalle, Suite 600
Chicago IL 60602
(312) 726-1243
f:  (312) 726-1039

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that service of the foregoing was accomplished pursuant to ECF as to Filing Users and shall comply with LR 5.5 as to any party who is not a Filing User or represented by a Filing User, this 23rd day of August, 2011.

/s/ Noel W. Sterett
Attorney for Plaintiffs